STATE OF MAINE
CUMBERLAND, ss

STATE OF MAINE
CUMBERLAND, SS
CLERK'S OFFICE SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-05-169

2007 SEP 14 P 3: 59 REC - Cum-9/14/2007

HELEN MUTHER and PAUL WOODS,
Trustees of the BUFFETT COASTAL TRUST
                    Plaintiffs

v.

BROAD COVE SHORE ASSOCIATION, and
BETH ELLEN HESS, and
LESLIE B. CONNOLLY,
                    Defendants

ORDER ON MOTION FOR
SUMMARY JUDGMENT
ON COUNT IX OF
AMENDED COMPLAINT

DONALD L. GARBRECHT
LAW LIBRARY

JAN 15 2008

Before the Court is the Plaintiffs Helen Muther and Paul Woods', Trustees of the

Buffett Coastal Trust, Motion for Summary Judgment on Count IX of their Amended

Complaint.

## BACKGROUND

The Plaintiffs Helen Muther and Paul Woods, Trustees of the Buffett Coastal

Trust, (the "Plaintiffs") commenced this litigation in November 2005. The Plaintiffs own

a parcel of land and the house thereon in Cape Elizabeth, Maine. Their land is burdened

by an easement. The Plaintiffs brought suit to determine, inter alia, the scope of the

easement and who has the right to use it and for what purposes. The Defendants include

the Broad Cove Shore Association, known by various names throughout its existence

(jointly, the "Association"), a Maine non-profit corporation that represents the owners of

243 lots who claim rights in the easement; Beth Ellen Hess, the President of the

Association and a homeowner in one of the subdivisions that the Association represents;

and Leslie Connolly, a homeowner in another subdivision of the Association. The Association includes owners of lots in the J-lot Plan subdivision (which appears to consist of approximately twenty lots) who have individually deeded rights to the easement at issue, but who were not named as individual defendants in this case with the exception of Beth Ellen Hess. The remaining lot owners in the Association have rights to the easement only via the Association.

A judicial settlement conference was held on November 29, 2006 before Superior Court Justice Carl O. Bradford. At the settlement conference, the parties negotiated for more than seven hours before reaching an agreement that was entered on the record. On the record, parties on both sides confirmed that they had full authority to agree to the terms of the settlement agreement, including Beth Ellen Hess and Peter Connolly as directors for the Association who stated, via counsel, that they had authority to act for the Association.

Thereafter, the Plaintiffs drafted a Stipulated Judgment purporting to be a memorialization of the agreement reached at the settlement conference. The Defendants objected to this Stipulated Judgment and refused to sign it, arguing that it does not accurately reflect the terms discussed at the settlement conference. The Plaintiffs also allege that the Defendants have failed to comply with the terms agreed to at the settlement conference. The Defendants argue that the settlement conference produced no legally binding agreement, but rather a mere agreement to agree or an agreement in principle. The Defendants also claim that an error in punctuation was made in the transcript of the recording of the settlement conference and that this error involves a

material term over which the parties disagree.[1] A subsequent conference between the parties and Justice Bradford in April 2007 resolved some minor disagreements the parties had concerning the settlement agreement, but did not resolve several other issues.

On May 3, 2007, this Court (Crowley, J.) granted permission to the parties to amend their pleadings to add a claim for breach of the settlement agreement. The Plaintiffs timely filed an Amended Complaint and thereafter brought the present Motion for Summary Judgment on Count IX of the Amended Complaint. Count IX is the claim for breach of the settlement agreement. The Defendants answered the Amended Complaint and also filed an Opposition to the Plaintiffs' Motion for Summary Judgment.

## STANDARD OF REVIEW

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Arrow Fastener Co., Inc. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 15, 917 A.2d 123, 126. "A court may properly enter judgment in a case when the parties are not in dispute over the [material] facts, but differ only as to the legal conclusion to be drawn from these facts." *Tondreau v. Sherwin-Williams Co.*, 638 A.2d 728, 730 (Me. 1994). A genuine issue of material fact exists "when the evidence requires a fact-finder to choose between competing versions of the truth." *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93 ¶ 9, 878 A.2d 504, 507. An issue of fact is material if it "could potentially affect the outcome of the suit." *Id.* An issue is genuine if "there is sufficient evidence to require a fact-finder to choose between competing versions of the truth at trial." *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179. If

---

[1] To date, the parties have not been afforded an opportunity to challenge the accuracy of the written transcript of the agreement that was entered on the record.

3

ambiguities exist, they must be resolved in favor of the non-moving party. *Beaulieu v. The Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685.

## DISCUSSION

The Defendants make two arguments that the Motion for Summary Judgment should be denied. First, they argue that the Stipulated Judgment prepared by the Plaintiffs is not binding on them and that they are not obligated to sign the Stipulated Judgment. Second, the Defendants maintain that the agreement reached at the settlement conference and put on the record on November 29, 2006 is not a legally enforceable agreement but rather an agreement only in principle.

This Court agrees with the Defendants as to their argument that the Stipulated Judgment is not binding on them. Indeed, there is simply no evidence that the Defendants agreed to this particular memorialization of the terms reached at the settlement conference. Moreover, the Plaintiffs appeared to abandon the argument that the Stipulated Judgment is a binding agreement both in their later pleadings and in oral arguments at the motion hearing. Accordingly, the Stipulated Judgment is of no legal effect and is not binding on any of the parties to this litigation.

The Court disagrees, however, with the Defendants' argument that they are not bound by the settlement agreement reached at the settlement conference as reflected in the transcript of the conference. The Law Court has held that settlement agreements are binding so long as the parties to the agreement intend to be bound by it. *White v. Fleet Bank of Maine*, 2005 ME 72, ¶ 11, 875 A.2d 680, 683. The determination of whether or not the parties intend to be bound by a settlement agreement must be supported by "competent evidence." *Id.* In *White*, the Law Court found such competent evidence from

4

three witnesses who were present during negotiations and testified in an evidentiary hearing that an enforceable agreement had been reached and who agreed as to the material terms and who made references to the "agreement" in their post-mediation correspondence. *Id.* ¶ 12, 875 A.2d at 683.

There is competent evidence to find that an enforceable settlement agreement exists in this case. Indeed, at the hearing on the Plaintiffs' Motion for Summary Judgment, both sides admitted that they thought the matter was settled when the settlement conference concluded on November 29, 2006 and, according to the Defendants, it was only later that they thought something else. As the *White* court relied on the testimony of three witnesses to find competent evidence that the settlement agreement was enforceable, here there is a transcript of the agreement that supports the finding that the parties intended to be bound it.

The Defendants maintain that the settlement reached at the November 29, 2006 conference should not be honored because it is not sufficiently definite and likely will spawn new lawsuits to decipher what is meant by certain provisions of the settlement agreement. While the Defendants may be correct on this point, it does not negate the existence of the settlement agreement in the first place. Indeed, it appears that the parties to this litigation do not really dispute that an agreement was reached at the settlement conference; they simply disagree as to what certain terms in the settlement agreement mean. Moreover, the transcript of the settlement conference reveals in several instances that the parties understood that they were to be bound by the agreement reached that day. For instance, before the parties placed the terms of their settlement on the record, Justice Bradford stated that "the parties for the past seven plus hours have been engaged in

5

settlement conference here, and I'm pleased to report for the record that the parties have reached an agreement." *Transcript*, page 2, lines 12-15. Justice Bradford then invited counsel for either side to recite the agreed-upon terms "with the other side being free to make any corrections [ ] or additions." *Id.*, page 2, lines 15-19. The transcript makes clear that the parties took Justice Bradford's encouragement to heart as each made several clarifications. Via counsel, the Defendants made several comments throughout the hearing that indicate that they were aware that they were producing a binding agreement: "I just want to be clear that—that it—it was the plaintiffs in this case have agreed to mow and maintain the easement. So, I just want to be clear—," *Id.*, pages 10-11, lines 25, 1-2; "I just want to get on the record that the—I don't know if it was clear or not the way you were trying to set it up...," *Id.*, pages 23-24, lines 25, 1-2; "I just didn't want to find myself getting closed out later on by saying that—that if the dog's out at the owner's feet getting a leash on and it's dry land that—that they violated the—the agreement...," *Id.*, page 25, lines 21-24.

In addition to his opening statements, Justice Bradford made several other comments throughout the hearing that reinforce the finding that a binding agreement was being placed on the record. At one point, Justice Bradford stopped the proceedings when he noticed one of the parties shaking his head and said, "You keep nodding your head and shaking your head. We either have an agreement here or we do not...I'll stay here until whatever time it takes to get this matter resolved." *Id.*, page 19, lines 19-25. Most importantly, at the close of the hearing, Justice Bradford asked each party separately whether the terms as set forth at the hearing are "a fair representation of your understanding of the agreement?" *Id.*, pages 28-29. Each party answered Justice

Bradford affirmatively. *Id.* The foregoing, coupled with the fact that the parties negotiated for over seven hours before making sure to record the terms of their settlement negotiations, support the finding that the parties intended to be bound by the agreement reached at the settlement conference.

Finally, the fact that the parties did not fix their agreement in written form even though they may have intended to is not sufficient to find that there is no agreement. Indeed, the Law Court has recognized that there are times when an oral contract exists even if the parties have agreed that a written contract should be drafted and no such written contract was ever made. *See Clements v. Murphy*, 125 Me. 105, 107, 131 A. 136, 137 (1925) (Law Court held that it would have upheld a finding by the jury that the parties had an enforceable oral contract even though they had agreed that a written contract should be drafted because the written contract would "only [be] a convenient memorial of their previous completed oral contract"). Thus, while it appears that the parties in the instant case expected to reduce the agreement reached at the settlement conference to written form, the fact that they have been unable to agree on a written contract does not negate the existence or enforceability of the oral agreement reached on November 29, 2006.

Therefore, the entry is:

> All parties shall have thirty (30) days from the entry of this Order to object to the accuracy of the transcript of the agreement that was entered on the record. The Plaintiffs' Motion for Summary Judgment on Count IX of the Amended Complaint is hereby GRANTED unless the parties to this litigation can agree to a Stipulated Judgment within sixty (60) days of the entry of this Order. Should the parties be unable to reach a Stipulated Judgment, the agreement reached at the settlement conference as reflected

7

in the transcript of said conference shall be binding upon all the parties to this suit.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this __14th__ day of __September__, 2007.

_____
Robert E. Crowley
Justice, Superior Court

8

ANDREW SPARKS ESQ
DRUMMOND & DRUMMOND
ONE MONUMENT WAY
PORTLAND ME 04101

THOMAS MCKEON ESQ
RICHARDSON WHITMAN LARGE & BADGER
PO BOX 9545
PORTLAND ME 04112-9545

JUDY METCALF ESQ
EATON PEABODY
PO BOX 9
BRUNSWICK ME 04011-0009

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-05-169
*AJM - CUM - 8/30/2011*

HELEN MUTHER,
et al.,

        Plaintiffs

v.

BROAD COVE SHORE
ASSOCIATION, et al.,

        Defendants

ORDER ON PLAINTIFFS'
MOTION FOR CONTEMPT

Before the court is the plaintiffs' motion for contempt against defendant Broad Cove Shore Association (2005). The court has considered the testimony, the exhibits, the transcript of the settlement dated 11/29/06, and the arguments of counsel.

The court concludes that the defendant is in contempt of the terms of the parties' settlement dated November 29, 2006. The defendant has failed or refused to perform the acts required in spite of the ability to do so. M.R. Civ. P. 66(d)(2)(D)(i) & (ii). Even accepting, for the purposes of argument only, the defendant's position that everything was in flux until the plaintiffs' Rule 60(b) was withdrawn, the motion was withdrawn two months prior to the hearing on the motion for contempt.

The following is ordered:

1. The defendant will pay a $2,000.00 fine to the Treasurer, State of Maine. M.R. Civ. P. 66(d)(3)(B); State v. Dhuy, 2006 Me. Super. LEXIS 36, *7 (Feb. 16, 2006). Payment of the fine is stayed for 60 days from the date of this order to allow the defendant to purge its contempt as follows:

    a. By 9/12/11, the defendant will pay for the gate, fencing, and access control system. (Pls.' Exs. 1-3.)

1

b. By 9/12/11, the defendant will provide to the plaintiffs a list of people who paid the additional fees for the key card as of 7/1/07, 7/1/08, 7/1/09, 7/1/10, and 7/1/11.

c. Within 60 days of the date of this Order, the defendant will correct the corporate deficiencies in the Broad Cove Shore Association by legally merging the 2005 Broad Cove Shore Association and the 1962 Broad Cove Shore Association

d. Within 60 days of the date of this Order, the defendant will place a marginal notation on the deed recorded from Allan Balfour to the Broad Cove Shore Association recorded on or about October 5, 2005 and provide an affidavit associated with the deed, executed by a person shown to have authority to act on behalf of the Broad Cove Shore Association, to note that the deed is void ab initio and has no effect.

The clerk is directed to incorporate this order into the docket by reference.

Date: August 30, 2011

Nancy Mills
Justice, Superior Court

STATE OF MAINE
Cumberland, ss, Clerk's Office

AUG 3 0 2011

RECEIVED

2

RE-05-169

Plaintiff's counsel
is Walter McKee
Eaton Peabody

Defendant's counsel
is Philip Mancini
Drummond & Drummond

STATE OF MAINE
CUMBERLAND, ss.

HELEN MUTHER, et al,

Plaintiffs

v.

BROAD COVE SHORE ASSOCIATION,
et al,

Defendants

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-05-169,
TDW-Cum- 5/8/2012

ORDER

STATE OF MAINE
Cumberland, ss, Clerk's Office

MAY 03 2012

RECEIVED

Before the court is the issue of whether defendant Broad Cove Association (2005) has purged itself of contempt as found by the court (Mills, J.) in its order dated August 30, 2011.

By letter dated November 8, 2011 plaintiff's counsel contended that the Broad Cove Association had not complied with the August 30, 2011 order and remained in contempt. That letter went astray and did not get docketed in the court file at that time. After some further delay occasioned by the recusal of Justice Mills, a hearing was held on January 27, 2012, and the court issued an order on February 3, 2012 that resulted in further submissions by the parties in mid February.

The court has now reviewed both the recent submissions and the extensive prior record in this case, which is necessary to understand the various disputes between the parties.[1]

---

[1] Simultaneously the court has been reviewing the equally extensive record in the accompanying case of Flaherty v. Muther, RE-08-98, in order to rule on the issues that were remanded by the Law Court in the various appellate decisions rendered in that case. See 2011 ME 32 ¶¶ 72, 90; 2012 ME 34 ¶11.

The August 30, 2011 order found that the Association had failed or refused to comply certain aspects of a settlement agreement entered on November 29, 2006. The court ordered the Association to pay a $2000 fine but stayed the fine for 60 days in order to allow the Association to purge itself of contempt by performing the following acts:

1. By September 12, 2011, to pay for the gate, fencing, and access control system that had been agreed to;

2. By September 12, 2011 to provide plaintiffs with a list of the people who paid the additional fees for the key card as of July 1, 2007, July 1, 2008, July 1, 2009, July 1, 2010, and July 1, 2011;

3. Within 60 days, to legally merge the 2005 Broad Cove Shore Association and the 1962 Broad Cove Shore Association; and

4. Within 60 days, to place a marginal notation on the deed from I. Allan Balfour to the Broad Cove Shore Association recorded on or about October 5, 2005 and provide an affidavit associated with the deed, executed by a person shown to have authority to act on behalf of Broad Cove Shore Association, to note that the deed is void ab initio and of no effect.

At this juncture in the case the Association has the burden of proof to show that it has complied with the August 30, 2011 order. As to item 1, the Association has demonstrated that it made the required payment for the gate, fencing, and control system. As to item 2, the Association has demonstrated that it provided the lists in question. As to item 4, the Association has demonstrated that it placed a marginal notation on the deed and provided the necessary affidavit. As to item 3, however, there is a dispute whether the Association has demonstrated that the 2005 Broad Cove Shore Association has been legally merged with the 1962 Broad Cove Shore Association.

Plaintiffs contend that the Associations have not been legally merged. As the court understands it, they further contend that a valid merger is important because plaintiffs are entitled to be certain that members of the 1962 Broad Cove Association (other than those who have independent rights as J-Lot owners) are bound by the

2

November 29, 2006 settlement.[2] Plaintiffs also suggest that if the old and new Associations have not been legally merged, the affidavit declaring the Balfour deed recorded on October 5, 2005 to have been void ab initio may also be invalid since it was not filed by a person with authority to act on behalf of the (merged) Broad Cove Association.

The court is faced with two issues. First, are plaintiffs correct that the Association has failed to demonstrate that the 1962 Broad Cove Association and the 2005 Broad Cove Association have been legally merged? Second, if those associations have not been shown to have been legally merged, what is the effect of that failure and what further relief should be provided to plaintiffs?

1. Legal Merger

In its effort to comply with the legal merger requirement in Justice Mills's August 30, 2011 order, the Association drew upon the services of James Hopkinson, Esq., the attorney who in 2005 incorporated the new association and filed documentation attesting to the merger of the old and new associations. While plaintiffs note that no meeting of members – of either the 1962 Association or the 2005 Association – was ever held to approve the merger, the Association relies on Mr. Hopkinson's advice that no meeting was necessary because the directors of the associations had the authority to act on the merger.

---

[2] Plaintiffs argue in passing that the allegedly invalid merger has resulted in bylaws that potentially dilute the property rights of members of the 1962 Broad Cove Association with respect to property rights in a beach owned by the Association that is separate and apart from the beach known as Secret Beach. The only issues before the court involve implementation of the November 29, 2006 settlement agreement, which involves Secret Beach. In any conflict between Association bylaws and the settlement agreement with respect to Secret Beach, the settlement agreement is controlling. The court expresses no opinion as to issues not controlled by the settlement agreement, and this order is not intended to preclude any challenges that may be made to Association bylaws on any other issues.

3

On this issue Mr. Hopkinson is correct up to a point. The governing statute allows the directors of a nonprofit corporation to approve a merger unless the members are specifically given the right to vote on mergers in the articles of incorporation or bylaws. See 13-B M.R.S. § 903(1)(B).[3] There was no express provision in the bylaws of either the new association or the old association that requires a member vote on a merger.[4]

Nevertheless the court agrees with plaintiffs that it has not been shown that the associations have legally merged. This is true for two reasons. First, the January 27 hearing established that Mr. Hopkinson relied on the representations of the persons who retained him in 2005 that they were the board members of the 1962 association. There is no evidence that this was correct. At least one of the supposed 1962 association directors, Beth Hess, was never elected to the board and could not have been a director at the time the 1962 association was administratively dissolved. Unless the persons who voted for the merger on behalf of the old association can be shown to have been validly elected directors at that time, their action cannot constitute valid approval on the part of the 1962 association.[5]

Second, even if the persons acting as directors of the 1962 association had been validly elected, they did not adopt a plan of merger outright. Instead, they adopted a resolution that the plan of merger be submitted to the members for approval. Hess

---

[3] This differs from the procedure in for-profit corporations, where in most cases a shareholder vote is required to effectuate a merger. 13-C M.R.S. §§ 1104(2), 1104(7), 1105. See Ziegler v. American Maize Products Co., 658 A.2d 219, 222-23 (Me. 1995) (construing provisions of former Title 13-A).

[4] Article VI, Section 1 of the bylaws of the old association addresses the circumstances under which members can vote – specifically requiring that they not be in arrears in the payment of dues – but does not specify which matters have to be voted upon by the members.

[5] In contrast, Mr. Hopkinson was the incorporator of the 2005 Association and had the authority to elect its first board of directors. 13-B M.R.S. § 406(2). Those directors would have had the authority to approve a merger under § 903(1)(B).

4

Deposition Ex. 23. A similar resolution was adopted by the directors of the new (2005) association. Hess Deposition Exhibit 22. On the record before the court, neither the members of the 1962 association nor the members of the 2005 association ever validly approved the plan of merger. Such approval could only have occurred at a meeting of the members pursuant to 13-B M.R.S. §§ 602-04 (and such a meeting was never held) or by unanimous written consent pursuant to § 606.

From the materials submitted to the court, it appears that ballots were circulated but unanimous consent was not obtained. The ballots submitted might have constituted valid proxies if a meeting had been held. Because no meeting was held, there was never a valid merger. This is true even though it appears that all or almost all of the ballots obtained were cast in favor of the merger and may have been cast in sufficient numbers to constitute a quorum.[6]

On this record the court concludes that although the Association may not have acted unreasonably in relying on Mr. Hopkinson's advice, the 1962 and 2005 associations have not been legally merged and the Association has not purged itself of contempt under the August 30, 2011 order.


2. Significance of Merger

Notwithstanding the above, as the court understands the facts, the significance of the merger issue is questionable. The new (2005) Broad Cove Association appears to have included all of the landowners who were originally members of the 1962 Broad Cove Shore Association plus a substantial number of additional landowners from subdivisions created subsequent to 1962. See Articles of Incorporation of the 2005

---

[6] It appears that under the bylaws of the 1962 association, only 10 percent of the members in person or by proxy were necessary for a quorum. Under the bylaws of the 2005 association, a majority of the members either in person or by proxy were necessary to constitute a quorum.

5

Association. As a result, all of the old Association members are bound by the settlement (as members of the new Association), and the affidavit filed on behalf of the new Association is sufficient to declare the 2005 Balfour deed void ab initio regardless of whether a merger has occurred.

As a result, while the court fully agrees that a merger of the 1962 and 2005 associations was contemplated in the November 2006 settlement agreement, this appears to be the least significant of the requirements in the November 2006 settlement agreement and the August 30 order. As far as the court can tell, the Association has complied with the crucial aspects of the settlement agreement and the essential provisions in the August 30 order.

The degree of importance that should be attached to the merger issue necessarily affects what additional relief should be awarded to plaintiffs and what contempt sanctions should be imposed on the Association. Under the circumstances, the court will convene a hearing to consider two issues: (1) whether there is some significance to a merger that the court has overlooked and (2) what further relief should be awarded and/or what further contempt sanction should be imposed. The court will hold plaintiffs' request for attorneys fees in abeyance until those issues are resolved.

The entry shall be:

The court finds that the defendant has complied with three of the directives in the August 30, 2011 order but has not complied with the requirement that the 1962 Association and the 2005 Association be legally merged. Hearing to be scheduled to determine further relief and/or contempt sanctions. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: May __7__, 2012

Thomas D. Warren
Justice, Superior Court

6

## HELEN MUTHER ET AL VS BROAD COVE SHORE ASSOCIATION ET ALS

CASE #:PORSC-RE-2005-00169

----------------------------------------------------------------------

SEL VD                          REPRESENTATION TYPE    DATE


### 01 003096 ATTORNEY: BLOOM, BARRI
ADDR: 465 CONGRESS STREET PO BOX 9545 PORTLAND ME 04112-9545

| | | | |
|---|---|---|---|
| FOR: BETH ELLEN HESS | DEF | RTND | 12/12/2005 |
| FOR: LESLIE B CONNOLLY | DEF | RTND | 12/12/2005 |

### 02 003852 ATTORNEY: MANCINI, PHILIP P
ADDR: ONE MONUMENT WAY PORTLAND ME 04101

| | | | |
|---|---|---|---|
| FOR: BROAD COVE SHORE ASSOCIATION | DEF | RTND | 12/22/2011 |

### 03 007848 ATTORNEY: MCKEE, WALTER
ADDR: 133 STATE STREET PO BOX 258 AUGUSTA ME 04332-0258

| | | | |
|---|---|---|---|
| FOR: BUFFETT COASTAL TRUST | PL | RTND | 04/10/2008 |
| FOR: PAUL WOODS | PL | RTND | 04/10/2008 |
| FOR: HELEN MUTHER | PL | RTND | 04/10/2008 |

### 04 007535 ATTORNEY: MCKEON, THOMAS
ADDR: 465 CONGRESS STREET PO BOX 9545 PORTLAND ME 04112-9545

| | | | |
|---|---|---|---|
| FOR: BETH ELLEN HESS | DEF | RTND | 12/12/2005 |
| FOR: LESLIE B CONNOLLY | DEF | RTND | 12/12/2005 |

### 05 003649 ATTORNEY: SPARKS, ANDREW
ADDR: ONE MONUMENT WAY PORTLAND ME 04101

| | | | |
|---|---|---|---|
| FOR:BETH ELLEN HESS | DEF | RTND | 12/12/2005 |
| FOR:LESLIE B CONNOLLY | DEF | RTND | 12/12/2005 |
| FOR:BROAD COVE SHORE ASSOCIATION | DEF | RTND | 12/12/2005 |

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-05-169
TDW – CUM – 7/R 2012

HELEN MUTHER, et al,

Plaintiffs

v.                                                      ORDER

BROAD COVE SHORE ASSOCIATION,
et al,

STATE OF MAINE
Cumberland, ss, Clerk's Office

JUL 2012

RECEIVED

Defendants

After a hearing on June 27, 2012 in response to the court's order dated May 7, 2012 and filed May 8, 2012, the court orders as follows:

1. The court adheres to the conclusion in its May 7 order that the merger of the 1962 Broad Cove Association and 2005 Broad Cove Association was the least significant of the requirements set forth in Justice Mills's August 30, 2011 order and that the Associuation has complied with the most important requirements of that order.

2. Nevertheless the November 29, 2006 settlement agreement called for a merger of the two associations and such a merger was ordered on August 30, 2011. The Association is found in contempt for its failure to comply with that aspect of the August 30, 2011 order.

3. As a sanction for that contempt, the Association shall be required to pay a $ 2000 fine. The imposition of that fine is stayed for 90 days from the date of this order to allow the Association to purge itself of contempt by either

> (1) approval or ratification of the plan of merger at meetings of the members of both the 1962 Broad Cove Shore Association and the 2005 Broad Cove Shore Association as outlined in the November 8, 2011 letter from counsel for plaintiffs; or

(2) approval or ratification of the plan of merger by duly authorized directors of the 2005 Broad Cove Shore Association, along with approval or ratification of the plan or merger at a meeting of the members of the 1962 Broad Cove Association.

4. The legal merger of the 1962 Association and the 2005 Association, which is ordered herein, is intended to bring this action – commenced more than six years ago – to a final conclusion.

5. The court will not impose the prior $ 2000 sanction proposed in Justice Mills's August 30, 2011 order for three reasons. First, the court has found that the Association – although failing to have effectuated a legal merger – complied with the significant aspects of August 30, 2011 order. Second, the court concludes that although the Association failed to accomplish a legal merger, the Association did not act unreasonably in relying on Mr. Hopkinson's advice. Finally, although the November 29, 2006 settlement had previously been found to be a binding and enforceable agreement, prior to the entry of the August 30, 2011 order, no court had ordered the Association to legally merge the 2005 Association with the 1962 Association.[1]

6. On the issue of attorneys fees the court concludes that although plaintiffs sought attorneys fees when they filed their motion for contempt, Justice Mills did not include such fees as a remedy in her August 30, 2011 order. Accordingly, the court concludes that Justice Mills did not intend to include attorneys fees as part of her contempt remedy. See M.R.Civ.P. 66(d)(3)(C).

7. As part of its contempt remedy in this order, however, the court will award attorneys fees and costs to plaintiffs for the time spent in preparing for and attending the June 27, 2012 hearing and will award further attorneys fees and costs to plaintiffs if

---

[1] For a party to be held in contempt, there must be a violation of a court order that informed the party in definite terms of the obligations imposed by the order. Lewin v. Skehan, 2012 ME 31 ¶ 19, 39 A.3d 58.

2

they have to incur any such fees and costs in connection with any failure by the Association to remedy the deficiencies identified in this order and in the court's May 7, 2012 order within 90 days. Plaintiffs shall submit an application for such fees within 21 days after it has been determined that a legal merger has been accomplished and the deficiencies identified in this order and in the May 7 order have been remedied. The Association shall have 21 days in which to submit any objections to the fees requested and plaintiff shall have 7 days in which to submit any reply papers.

The entry shall be:

Defendant Association found in contempt with 90 days in which to purge itself or face further sanctions. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: June _29_, 2012

Thomas D. Warren
Justice, Superior Court

3

# HELEN MUTHER ET AL VS BROAD COVE SHORE ASSOCIATION ET ALS
CASE #:PORSC-RE-2005-00169

--------------------------------------------------------------------

SEL VD                          REPRESENTATION TYPE    DATE

## 01) 003096 ATTORNEY: BLOOM, BARRI
ADDR: 465 CONGRESS STREET PO BOX 9545 PORTLAND ME 04112-9545
FOR:BETH ELLEN HESS              DEF      RTND  12/12/2005
FOR:LESLIE B CONNOLLY            DEF      RTND  12/12/2005

## 02) 003852 ATTORNEY: MANCINI, PHILIP P
ADDR: ONE MONUMENT WAY PORTLAND ME 04101
FOR:BROAD COVE SHORE ASSOC.      DEF      RTND  12/22/2011

## 03) 007848 ATTORNEY: MCKEE, WALTER
ADDR: 133 STATE STREET AUGUSTA ME 04330
FOR:BUFFETT COASTAL TRUST        PL       RTND  04/10/2008
FOR:PAUL WOODS                   PL       RTND  04/10/2008
FOR:HELEN MUTHER                 PL       RTND  04/10/2008

## 04) 003649 ATTORNEY:SPARKS, ANDREW
ADDR:ONE MONUMENT WAY PORTLAND ME 04101
FOR:BETH ELLEN HESS              DEF      RTND  12/12/2005
FOR:LESLIE B CONNOLLY            DEF      RTND  12/12/2005
FOR:BROAD COVE SHORE ASSOC.      DEF      RTND  12/12/2005

STATE OF MAINE
CUMBERLAND, ss.

HELEN MUTHER, et al,

Plaintiffs

v.

BROAD COVE SHORE ASSOCIATION,
et al,

Defendants

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-05-169
TJW CUM - 1/24/2013

ORDER

STATE OF MAINE
Cumberland, ss, Clerk's Office

JAN 24 2013

RECEIVED

Before the court are a second motion for contempt dated September 7, 2012 brought by plaintiffs Helen Muther and Paul Woods and a November 20, 2012 cross motion for contempt filed by defendant Broad Cove Shore Association.

Plaintiffs' second motion for contempt argues that the Broad Cove Shore Association is in violation of two aspects of the November 29, 2006 settlement agreement: (1) that the Association provide a correct list of the households that have paid yearly fees for use of the easement; and (2) that the Association purchase insurance to cover the fence and gate.[1]

For its part, the Association's motion for contempt argues that Muther and Woods are in violation of an obligation to submit any disputes relating to the November 29, 2006 settlement to arbitration.

The court held a hearing on these motions on January 3, 2013.

The first question before the court is whether the obligations imposed by the November 29, 2006 settlement – to the extent those obligations are discernable based on

_____

[1]    In their original motion Muther and Woods also contended that the Association was in violation of its obligation to maintain a $5,000 reserve account but that aspect of the motion was withdrawn at the January 3, 2013 hearing.

the transcript of the proceeding – are directly enforceable through contempt or whether the court must first issue specific orders to the parties to perform their obligations under the settlement.

1. Whether Orders Determining that the November 2006 Settlement Agreement Is Binding Are Directly Enforceable by Contempt

After the parties' failure to reduce the November 29, 2006 settlement to an agreed judgment, Muther and Woods amended their complaint to seek an order "declaring" that plaintiffs' draft of the proposed judgment should be entered as the final judgment in the case. See Amended Complaint dated May 31, 2007. Muther and Woods then filed a motion seeking summary judgment on that issue.

Ruling on that summary judgment motion in an order dated September 14, 2007 Justice Crowley concluded that the proposed judgment submitted by Muther and Woods was not binding on the defendants and should not be entered. However, he held that the parties were bound by the agreement reached at the November 29, 2006 settlement conference as reflected in the transcript of that conference.

In a further "Order on All Pending Motions" dated April 2, 2008 Justice Crowley reiterated that his September 14, 2007 order held that "the parties to this litigation are bound by the terms of the settlement agreement as reflected in the [November 29, 2006] transcript." April 2, 2008 order at 2. That order further stated that "the transcript in its present form is final and binding on the parties to this litigation" and that "[a]ny disputes as to the meaning of the transcript must be brought in a separate suit." April 2, 2008 order at 3.

Justice Crowley's orders essentially granted declaratory relief. While concluding that the statements placed on the record on November 29, 2006 constituted a binding

2

settlement agreement, those orders do not contain any injunctive language or any language directing the parties to perform that agreement. Indeed, the April 2, 2008 order contemplated the possibility that in some cases further proceedings would be necessary to establish the meaning of the agreement.

The Law Court thereafter affirmed Justice Crowley's orders. Muther v. Broad Cove Shore Association, 2009 ME 37, 968 A.2d 539. Like Justice Crowley's orders, the Law Court decision does not contain any language directing the parties to perform their obligations under the agreement.

Accordingly, Justice Crowley's September 14, 2007 and April 2, 2008 orders do not in themselves constitute the kind of judicial directives that are directly enforceable in contempt. "For a person to be held in contempt for violating a court order, that court order must inform the person in definite terms what duties the order imposes upon him." Lewin v. Skehan, 2012 ME 31 ¶ 19, 39 A.3d 58 (emphasis added).[2]

In this case there is no court order directing the Broad Cove Shore Association to provide a list in the format sought by Muther and Woods and no court order directing the Association to purchase insurance. In both cases the Association argues there is no such obligation, and there is a basis to dispute whether the obligations asserted by Muther and Woods are enforceable.

Thus the November 29, 2006 transcript discusses the list to be provided by the Association in the following terms:

---

[2] The court acknowledges that this ruling may be inconsistent with a previous orders entered in this case. However, while the Association was found in contempt in the court's August 30, 2011 order (Mills, J.), no sanctions were imposed on the Association in that order. By the time an attorney fee sanction was imposed, the Association had been made subject to a clear and definite court order. See June 29, 2012 order ¶ 5. Moreover, the obligations set forth in the August 30, 2011 order were obligations that were clearly set forth in the November 29, 2006 transcript. The alleged violations of the settlement that are now before the court are more ambiguous or otherwise problematic.

3

> The Broad Cove Shore Association will provide the Muther/Woods family the list of those persons who have paid for the active right to use to get the key card by [the] anniversary date every year.

November 29, 2006 Tr. 6. The dispute between the parties is whether the list needs to include the full names of all members of each household (which Muther and Woods are seeking) or whether the list requirement can be satisfied by a listing of last names, addresses, and number of persons in the household (the information provided by the Association to date).[3] While Muther and Woods may have a stronger position on this issue, nothing in the November 29, 2006 transcript clearly establishes what information is required to be included on the list.

The discussion of insurance on the November 29, 2006 transcript is somewhat more clear. On its face, it seems to suggest that the Association was going to pay for insurance on the fence out of the $ 5,000 reserve fund that was to be established.[4] However, the Association argues that since it does not own the fence, it cannot obtain insurance because it does not have an insurable interest in the fence. This argument finds some support in the caselaw. See, e.g., Gendron v. Pawtucket Mutual Insurance

---

[3] As Muther and Woods point out, in the case of one family, the list provided to date lists the number of persons in one household as "4+", which is only slightly better than not providing a number of household members.

At the January 3 hearing counsel the Association suggested that one of the reasons the Association is concerned about the list is because it fears that Muther and Woods intend to argue that only household members on the list can use the easement, thus excluding households from bringing guests or out of town relatives. In this connection, the court notes that, while the contents of the list may be relevant in determining the persons who can use the easement under the November 29, 2006 settlement, the list would not necessarily be determinative on issues such as the status of guests or out of town relatives.

[4] The subject of insurance arose in following statement by Ms. Metcalf during her discussion of the $ 5,000 reserve fund: "I think you [the Association] were gonna pay for your insurance out of that, too, at least the insurance associated with the care and feeding of the fence. " November 29, 2006 Tr. 10. Because Ms. Metcalf prefaced this remark with the words "I think," an argument can be made that she was venturing a supposition rather than setting forth an agreed term of settlement. However, counsel for the Association did not take issue with Ms. Metcalf's statement during the November 29, 2006 hearing.

4

Co., 384 A.2d 694, 697 (Me. 1978). The Association also argues that the existence of the $ 5,000 reserve fund is sufficient to cover damage to the fence and that insurance is therefore not necessary.

Similarly, on the Association's motion, there is no court order directing Muther and Woods to submit any disputes under the November 29, 2006 settlement agreement to arbitration. As discussed below, Muther and Woods dispute that the agreement to arbitrate is applicable to the issues presently before the court, and the language of the settlement transcript does not definitively resolve that issue.

Under these circumstances, neither party is entitled to a finding of contempt. If the court can discern the intent of the settlement, it can direct the parties to perform any appropriate conditions of the settlement agreement. Such a directive, if not complied with, could form a basis for a future order of contempt. In that connection the court must first consider the Association's claim that the November 29, 2006 settlement contemplated that all disputes were to be subject to arbitration. If the Association is correct on that issue, then resort to arbitration must precede any involvement by the court in the parties' ongoing disputes with respect to the settlement.


### 2. Arbitration

The alleged requirement to arbitrate is derived from the following passage in Ms. Metcalf's recitation of the settlement:

> The parties have agreed that disputes with regard to the exercise of this easement will be submitted to an arbitration mechanism. The details of that have not been worked out yet, and the parties have committed to work in good faith to the details of such an agreement.

November 29, 2006 Tr. 8.

5

Initially there is a question whether an agreement to arbitrate is enforceable if the mechanism for arbitration has not been agreed to. However, under 14 M.R.S. § 5929 the court may appoint one or more arbitrators when an arbitration agreement does not provide a method for appointment. Counsel for Muther and Woods did not argue at the January 3 hearing that arbitration cannot be enforced because the arbitration mechanism was not agreed to.

Counsel for Muther and Woods did point out that arbitration was not raised as a defense to the first contempt motion,[5] and he noted that Ms. Metcalf's statement with respect to arbitration was followed by the words "with regard to the exercise of this easement." Based on this language, counsel for Muther and Woods contended that the agreement to arbitrate applies to usage of the easement and not to other aspects of the settlement, including the two matters on which Muther and Woods now seek contempt.

The Association responded that "the exercise of this easement" language should be broadly construed and not limited to usage issues. The Association also argued at the January 3 hearing that on any issue where the November 29, 2006 transcript is not clear, the court needs to offer the parties an opportunity to present parol evidence with respect to the settlement negotiations before it construes potentially ambiguous statements in the November 29, 2006 transcript.

If the court were limited solely to construing the statement relating to arbitration in the November 29, 2006 transcript, it would be inclined to conclude that Muther and Woods have the better of the argument. However, the November 29, 2006 transcript does not constitute an integrated written contract that would exclude introduction of parol evidence as to the parties' intentions with respect to arbitration.

---

[5] Counsel for Muther and Woods did not argue that the Association has waived its rights to arbitration but rather that the Association's failure to invoke arbitration on the first contempt motion should cast doubt on its current insistence that arbitration is required.

6

Moreover, in reviewing the court file on whether the November 29, 2006 settlement is directly enforceable through contempt, the court found at least one item which supports the Association's position that all disputes under the November 29, 2006 settlement are to be subjected to arbitration. The proposed judgment prepared by counsel for Muther and Woods and submitted with their motion for summary judgment to enforce the settlement provides for arbitration if "any disputes arise with regard to the obligations and undertakings herein." Proposed Judgment submitted with plaintiffs' motion for summary judgment filed July 20, 2007 ¶ 13. The "obligations and undertakings" in plaintiffs' proposed judgment include all aspects of the November 29, 2006 settlement and are not limited to usage of the easement.[6] This suggests that Muther and Woods may have understood that arbitration would apply to all disputes arising under the November 29, 2006 settlement, as the Association now contends.

The court concludes that a hearing may be necessary as to the Association's contention that arbitration is called for with respect to any disputes under the November 29, 2006 settlement. Before holding such a hearing, the parties are ordered to submit written offers of proof as to what parol or other evidence, if any, they would submit at such a hearing.[7] After reviewing the offers of proof, the court will determine whether an evidentiary hearing is appropriate.

---

[6]    It might be noted that even if arbitration were limited to the usage of the easement, as interpreted by Muther and Woods, the issue of whether households can bring guests and out of town relatives, see footnote 3 above, would appear to be subject to arbitration.

[7]    In the interest of avoiding delay, the parties shall include in their offers of proof any parol or other evidence they would intend to offer with respect to the content of the list to be submitted by the Association and with respect to the subject of insurance on the fence. If the court determines that arbitration is not required, it will therefore have a full record on which to rule on those issues.

7

When the arbitration issue is resolved, if arbitration is not found to be required as to the list and insurance issues raised by Muther and Woods, the court will issue a ruling on those issues.[8]

The entry shall be:

Plaintiff's second motion for contempt dated September 7, 2012 and defendant's motion for contempt dated November 20, 2012 are denied. On the issue of whether arbitration is required on all disputes arising under the November 29, 2006 settlement, the parties shall serve and file written offers of proof by February 8, 2012.

The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: January **24**, 2013

_____
Thomas D. Warren
Justice, Superior Court

---

[8]     The court feels constrained to express its concern that a settlement agreement reached in November 2006 and found to be binding by the Superior Court in April 2008 and by the Law Court in April 2009 is still the source of disputes and mutual distrust and appears to have devolved into a war of attrition. At least one other aspect of the Secret Beach litigation is now pending before the Law Court on a third round of appeals. Under these circumstances, counsel are urged to cooperate to the extent possible in order to resolve any pending issues and to present any such issues that cannot be resolved for adjudication. To the extent that certain letters and emails have gone unanswered (as alleged by counsel for Muther and Woods), that should not happen in the future.

8

HELEN MUTHER ET AL VS BROAD COVE SHORE ASSOCIATION ET ALS
CASE #:PORSC-RE-2005-00169


003307 ATTORNEY:  PAZAR, CHRISTOPHER
ADDR:ONE MONUMENT WAY PORTLAND ME 04101
   F FOR:  BROAD COVE SHORE ASSOCIATION      DEF     RTND   11/26/2012

007848 ATTORNEY:  MCKEE, WALTER
ADDR: 133 STATE STREET AUGUSTA ME 04330
   F FOR: HELEN MUTHER             PL      RTND   04/10/2008
   F FOR: PAUL WOODS              PL      RTND   04/10/2008
   F FOR: BUFFETT COASTAL TRUST     PL      RTND   04/10/2008

STATE OF MAINE
CUMBERLAND, ss.

HELEN MUTHER, et al,

    Plaintiffs

v.

BROAD COVE SHORE ASSOCIATION,
et al,

    Defendants

SUPERIOR COURT
CIVIL ACTION
Docket No. RE-05-169
*TDW - C... - 5/8/202*

ORDER

STATE OF MAINE
Cumberland ss. Clerk's Office

MAY 08 2013

**RECEIVED**

In response to the court's order dated January 24, 2013 plaintiffs Muther and Woods have submitted an offer of proof but have also sought reconsideration of the court's denial of their motion for contempt and have argued that the court no longer has jurisdiction to consider whether it was the intent of the parties that all disputes under the settlement be referred to arbitration.

The parties' latest submissions were filed almost three months ago, but this order has been delayed because the court, which was initially puzzled by the plaintiffs' jurisdictional objection raised at the same time as their renewed request for enforcement, has since been considering the jurisdictional issue without finding any clear answer.

Request for Reconsideration

In summary, the court denied Muther and Woods's motion for contempt for three reasons: (1) because a person cannot be found in contempt unless that person "has failed or refused to comply with a court order," (2) because a person cannot be held in contempt when it is impossible for a person to comply, and (3) because a person cannot

be held in contempt for violating a court order unless that order informs the person "in definite terms what duties the order imposes upon him." Lewin v. Skehan, 2012 ME 31 ¶ 19, 39 A.2d 58.

On the first issue, in reviewing the history of the case, the court found that the November 29, 2006 settlement had been found to constitute a binding agreement but did not find that any court order had ever been entered directing the parties to comply with the November 29, 2006 settlement.

In support of their request for reconsideration, Muther and Woods argue that it is already the "law of the case" that the November 29, 2006 settlement agreement should be given the effect of an enforceable court order. There are three answers to this argument. The first was set forth in footnote 2 of the January 24, 2013 order. The second is that trial court rulings (as opposed to appellate rulings) are always subject to reconsideration, and the court – on a second motion for contempt – is not obliged to adhere to an implicit ruling made on a prior contempt motion.

Third, and perhaps most importantly, the November 29, 2006 settlement did not inform the Association in clear and definite terms that the Association was required to provide a list in the format which Muther and Woods now contend is required. Nor did it inform the Association in clear and definite terms that it was required to purchase insurance on property that it did not own. Even if the November 29, 2006 settlement were to be given the effect of a court order for purposes of contempt, therefore, the Association cannot be held in contempt for failing to perform disputed obligations that are far from clear. Nor can the Association be held in contempt for failing to insure property in which it possessed no insurable interest.

2

Jurisdiction

Muther and Woods argue that once the court has denied the pending motions for contempt, the court no longer has jurisdiction to resolve whether and when arbitration is required under the November 29, 2006 settlement agreement.

The court issued its order seeking an offer of proof because it understood from the January 3, 2013 hearing that Muther and Woods were still seeking enforcement of the agreement even if the motion for contempt was denied – e.g., that in the absence of contempt they were at least seeking an order directing the Association to provide them with more detailed list.[1] Muther and Woods now contend, however, that "the only continuing jurisdiction this court has in the 2005 case and the dispute between the parties is to enforce its prior orders." Plaintiffs' Memorandum dated February 8, 2013 at 4. Muther and Woods further contend that the court has ruled "that it will not do so." Id.

To make its position clear, the court denied plaintiffs' second motion for contempt for the reasons previously set forth but was prepared to entertain a motion by Muther and Woods to enforce the November 29, 2006 settlement. In that connection the court would have been required to consider the Association's argument that the parties had agreed to arbitration. If arbitration were not required and an order enforcing the settlement were issued, the court would have been prepared to enforce that order through the contempt power to the extent that it was appropriate to do so.

---

[1] The court understands that the Association is arguing that the list it has already provided is consistent with the settlement agreement, see November 29, 2006 Tr. 5-6, and that if Muther and Woods believed the list was deficient, they should have raised that issue at the time of the first contempt motion. At this time the court reserves decision on all issues with respect to the adequacy of the list.

3

If such a motion were now to be made, the first issue (in light of the jurisdictional issue that has since been raised by Muther and Woods) would be whether the court has jurisdiction to consider such a motion.[2] The second issue would be whether the dispute should be referred to arbitration.

On the issue of arbitration, the court concludes from the offers of proof that have been submitted that an evidentiary hearing would be required to determine whether, at the time of the November 29, 2006 settlement, the parties intended that arbitration would apply to all disputes or only those disputes relating to the exercise of the easement (as that term is interpreted by Muther and Woods). If arbitration were required, injunctive relief – enforceable in appropriate cases by contempt – would be available to enforce the arbitrator's rulings.

If Muther and Woods are not currently seeking enforcement of the settlement agreement or if they instead wish to commence a new action for that purpose, they are correct that the court needs to take no further action in this case. In that connection, Muther and Woods have pointed out that at an earlier stage the court (Crowley, J.) contemplated that if there were any future disputes about the meaning of the terms of the settlement agreement, those were "to be brought in a separate action." Order dated April 2, 2008, quoted in Flaherty v. Muther, 2011 ME 32 ¶ 18. The court does not necessarily read that statement as depriving the court of jurisdiction to hear subsequent motions to enforce the settlement but would be prepared to consider that issue now that it has been raised. See n. 2 above.

---

[2] Motions to enforce settlements are often brought in the actions in which the settlements have been reached. A party also may seek to enforce a settlement agreement by commencing a new action. The court is not aware of any instance where a jurisdictional challenge has been raised to a motion to enforce brought in the same action in which the settlement was reached, but the court would be obliged to consider such a challenge if it were raised.

4

Turning to any remedies that the Association may have, the court understands that the Association has been primarily raising arbitration as a defense to plaintiffs' second contempt motion and in support of the Association's cross motion for contempt. Those motions have been resolved. There is no pending motion to compel arbitration. If the Association has a dispute with Muther and Woods that it believes should be referred to arbitration, it is free to make a motion to compel arbitration, subject to the jurisdictional issue raised above and the potential need for an evidentiary hearing as to whether arbitration was agreed to. In the alternative, the Association has the right to commence a new action for the purpose of compelling arbitration if it sees fit to do so.

The entry shall be:

Plaintiff's request for reconsideration of the January 24, 2013 order is denied. Procedural order entered. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: May 7, 2013

Thomas D. Warren
Justice, Superior Court

5

009353 ATTORNEY: BILLINGS, JAMES A
ADDR: 133 STATE STREET AUGUSTA ME 04330
    F FOR: PAUL WOODS                       PL       RTND  02/08/2013
    F FOR: HELEN MUTHER                  PL       RTND  02/08/2013

003649 ATTORNEY:SPARKS, ANDREW
ADDR:ONE MONUMENT WAY PORTLAND ME 04101
    F FOR: BETH ELLEN HESS                  DEF      RTND  12/12/2005
    F FOR: BROAD COVE SHORE ASSOCIATION      DEF      RTND  12/12/2005
    F FOR: LESLIE B CONNOLLY               DEF      RTND  12/12/2005

003307 ATTORNEY: PAZAR, CHRISTOPHER
ADDR: ONE MONUMENT WAY PORTLAND ME 04101
    F FOR: BROAD COVE SHORE ASSOCIATION      DEF      RTND  11/26/2012