2005 ME 93

**FARRINGTON'S OWNERS'
ASSOCIATION et al.**

v.

**CONWAY LAKE RESORTS,
INC., et al.**

Supreme Judicial Court of Maine.

Submitted On Briefs: June 2, 2005.

Decided: Aug. 3, 2005.

Richard A. Spencer, Esq., Brian D. Willing, Esq., Drummond Woodsum & McMahon, Portland, for plaintiffs.

John C. Bannon, Esq., Sarah A. McDaniel, Esq., Murray Plumb & Murray, Portland, Alan J. Perry, Esq., Kurtz & Perry, South Paris, for appellees.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.*

DANA, J.

[¶ 1] Farrington's Owners' Association and Lynn Foley, Donald Hall, Peter Boutet, David Foss, and Ralph Tedesco, individuals who own condominium units in the Farrington development, appeal from a summary judgment entered in the Superior Court (Oxford County, *Gorman, J.*) in favor of Conway Lake Resorts, Inc., Pleasant Point Realty Trust, and Pleasant Point Inn, Inc. (hereinafter the "Lodge owner").

The condominium unit owners contend that the court erred in: (1) determining that the condominium declaration unambiguously permitted the installation and operation of two docks on the shore of Kezar Lake; (2) failing to determine that the declaration unambiguously limited the Lodge owner to one dock; and (3) concluding that moving the swimming area and adding a second dock did not violate the implicit regulations governing the beach area. Because we find that the declaration is ambiguous, we vacate the summary judgment and remand for a trial.

## I. BACKGROUND

[¶ 2] Farrington's on Kezar Lake is a condominium development in Lovell and was created in 1990 by Mountain High Development Corporation, the prior owner of all the property in dispute. The plaintiffs to this action are the Farrington's Owners' Association and five owners of individual condominium units in Farrington's.[1] The Lodge owner is a successor in title to the Main Lodge Lot and Tennis Court Lot, which abut the Farrington's development. The Lodge owner's lots include about 500 feet of lake frontage, the use of which is the center of this dispute.

[¶ 3] Mountain High created the Farrington's development by adopting a Condominium Declaration, which has been amended several times. The parties agree that the controlling document is the Amended Declaration dated November 9, 1990. That document describes the rights and restraints on the property, and includes an attachment labeled Schedule A–1, which spells out, inter alia, the rights

---

* Justice Paul L. Rudman participated in the initial conference, but retired before this opinion was certified.

1. For purposes of this opinion, the plaintiffs will be referred to collectively as "the Association."

the Association has to the 500 feet of lake frontage:

The beach, consisting of a strip of land 20 feet wide along the edge of the shore of Upper Kezar Lake along the entire shore frontage of Parcel 1–A on Plan recorded at Plan Book 10, Page 98, is to be a common non-exclusive use right of the condominium unit owners, the heirs and assigns, and their guests and invitees thereof. The ownership, control, supervision, maintenance and upkeep of the beach shall be held and performed by the Owner of the Main Lodge Lot, being Parcel 1–A depicted on said Plan and owned of record by the Declarant. *The Owner of the Main Lodge Lot shall establish regulations controlling the use and enjoyment of the beach for all parties entitled to use the same, including designating areas of use for boating, bathing, sunbathing and picnicking, provided regulations shall be posted on or near the beach area, and may be changed from time to time, so long as ratified by owners of at least five (5) of the condominium units.*

The Owner of the Main Lodge Lot saves, excepts and reserves to itself and its successors and assigns, and the guests and invitees thereof, the common right of use of the beach area, and *the exclusive right to attach a dock with boat slips onto said shore for the use and control by the Owner of the Main Lodge Lot for its guests and invitees and Condominium Unit Owners leasing the same with reasonable access to said dock and boat slips, including equipment* and machines, for the maintenance and upkeep thereof, and for utilities and pipelines running thereto over or under the ground. Should the Owner of the Main Lodge fail to provide the dock and boat slips for one boating season, or voluntarily terminate in writing the same recorded in the Oxford Western District Registry of Deeds with notice to the Association, then the Association shall have the right to attach a dock with boat slips onto said shore of the beach for the use and control by the Association for its members at rates and terms thereafter established exclusively by the Association, and the Owner shall be relieved of any responsibilities regarding said dock and boat slips.

(Emphasis added.)

[¶ 4] The Amended Declaration contains several other provisions that may be relevant to this case:

### ARTICLE 17   GENERAL PROVISIONS

. . . .

B. . . . . Schedules are attached to and incorporated by reference into this Declaration and are an integral part of this Declaration.

C.   Gender, Number, etc.   The use of the singular number in this Declaration shall be deemed to include the plural, the plural the singular, and the use of any one gender shall be deemed applicable to all gender.

[¶ 5] Throughout much of the period between 1992 and 2002, one dock with boat slips was maintained along the shorefront of the Main Lodge Lot. Each summer, the Association maintained a roped-off swimming area adjacent to the dock. In 2002, however, the Lodge owner received a municipal permit to replace the existing dock, which had twenty-four slips, with two new docks providing a total of thirty-two slips. These new docks were installed in 2003. Shortly thereafter, the Lodge owner moved the roped-off swimming area away from the docks to an area the Association regarded as inferior for swimming.

[¶ 6] The Association filed a complaint seeking a declaratory judgment that the

construction of the second dock violated the provisions of the Amended Declaration. The Association also contended that moving the swimming area violated the provisions of the Amended Declaration. In its answer to the complaint, the Lodge owner asserted that the construction of the second dock with slips did not violate the provisions of the Amended Declaration.

[¶ 7] Each side eventually filed motions for a summary judgment. The Lodge owner contended that the Amended Declaration, taken as a whole, unambiguously allowed for the construction and operation of more than one dock with slips. The Association asserted that the Amended Declaration unambiguously forbade the construction of more than one dock with slips, unless five Association members agreed. The Association also argued that even if the Amended Declaration was ambiguous, extrinsic evidence demonstrated that the parties never intended to allow more than one dock with slips to be built or operated.

[¶ 8] The court granted a summary judgment to the Lodge owner and denied the Association's motion. The court read the Amended Declaration as allowing multiple docks, based on the statement in Article 17C that the use of the singular includes the plural. The court, therefore, interpreted Schedule A–1, which referred to "a dock with boat slips," to also include "docks with boat slips." Although several other disputes between the parties remain unresolved, the trial court entered an order of final judgment on the first three counts in the complaint, pursuant to M.R. Civ. P. 54(b)(2). The Association appealed.

## II.  DISCUSSION

### A.  Standard of Review for Summary Judgment

[¶ 9] When we review a grant of a summary judgment, "we view the evidence in the light most favorable to the party against whom the judgment has been granted, and review the trial court's decision for errors of law." *MP Assocs. v. Liberty,* 2001 ME 22, ¶ 12, 771 A.2d 1040, 1044 (citing *Kandlis v. Huotari,* 678 A.2d 41, 42 (Me.1996)). "We independently determine whether the record supports the conclusion that there is no genuine issue of material fact and that the prevailing party is entitled to judgment as a matter of law." *Id.* A material fact is one that could potentially affect the outcome of the suit. *Id.* (citing *Burdzel v. Sobus,* 2000 ME 84, ¶ 6, 750 A.2d 573, 575). A genuine issue of material fact exists when the evidence requires a fact-finder to choose between competing versions of the truth. *Id.*

### B.  The Amended Declaration is Ambiguous

[¶ 10] The declaration of rights in the condominium development is a contract. *See Alexander v. Fairway Villas, Inc.,* 1998 ME 226, ¶ 11, 719 A.2d 103, 106. The interpretation of a contract, including whether or not its terms are ambiguous, is a question of law that we review de novo. *Levine v. KeyBank Nat'l Ass'n,* 2004 ME 131, ¶ 30, 861 A.2d 678, 686. The interpretation of ambiguous language in a contract, however, is a question of fact. *Acadia Ins. Co. v. Buck Constr. Co.,* 2000 ME 154, ¶ 8, 756 A.2d 515, 517.

> Language is considered to be ambiguous if it is reasonably susceptible to different interpretations. Generally, though, canons of construction require that a contract be construed to give force and effect to all of its provisions, and we will avoid an interpretation that renders meaningless any particular provision in the contract.

*Id.* ¶ 9 (citations and quotation marks omitted).

[¶ 11] Both parties contend that the plain language of the Amended Declaration unambiguously favors their interpretation. The Association argues that the plain language of Schedule A–1 says "a dock," not "multiple docks." The Lodge owner points to Article 17C's instruction that "the use of the singular number in this Declaration shall be deemed to include the plural." Because Article 17C applies to Schedule A–1, and the contract must be interpreted as a whole, the Lodge owner contends that "a dock" must be deemed to include "multiple docks." [2]

[¶ 12] The Association reasonably argues that if multiple docks are allowed, reserved in the provisions of Schedule A–1 the right of use of the beach area for condominium users is potentially threatened. It is difficult to believe that the parties intended Article 17C to allow potentially unlimited docks. Permitting more than one dock appears contrary to the plain language of Schedule A–1, reserving in the Lodge owner "the exclusive right to attach *a dock* with boat slips" to the shore. *See City of Augusta v. Quirion,* 436 A.2d 388, 394 (Me.1981) (stating that the plain language of a contract should not be "stretched or tortured to provide meaning sufficient" to advance one party's interpretation).

[¶ 13] Likewise, the Lodge owner presents a reasonable interpretation. Article 17B indicates that Article 17C's singular/plural rule applies to Schedule A–1.[3] If one applies that language mechanically to the sentence in question, the contract would appear to authorize multiple docks. And, as the Lodge owner emphasizes in its brief, we interpret a contract by looking at "the whole instrument" and giving "force and effect to all of its provisions." *Am. Prot. Ins. Co. v. Acadia Ins. Co.,* 2003 ME 6, ¶ 12, 814 A.2d 989, 993 (quotation marks omitted).

[¶ 14] Because, after applying the basic rules of contract interpretation, the provision in Schedule A–1 governing the Lodge owner's right to attach docks to the shorefront remains reasonably susceptible to two interpretations, we find the language ambiguous. We therefore vacate the summary judgment entered in favor of the Lodge owner.

## C. The Intention of the Parties Remains a Disputed Issue of Material Fact

[¶ 15] The Association argues that, if the Amended Declaration is ambiguous, the undisputed material facts establish that the parties intended only one dock with boat slips. The evidence is not that clear. The Lodge owner's statement of material facts included the assertion that from 1990 to 2002 there was more than one dock attached to the shore of the Main Lodge Lot. It also offers affidavit and deposition testimony from parties to the original agreement that the parties did not intend to limit the Lodge owner to one dock. This evidence amply establishes that the

---

**2.** We, as well as other courts, have recognized the "general rule for the interpretation of contracts ... [is] that the singular may be read as plural, and the plural as singular, when the context requires it." *Low v. Low,* 77 Me. 37, 39 (1885). *See also Holladay Duplex Mgmt. Co., L.L.C. v. Howells,* 47 P.3d 104, 107 (Utah App.2002) (acknowledging that while the indefinite article "a" does not always refer to "one," the context of the contract before the court established that a provision governing "a house" means "one house"). Provisions governing the construction of a contract must not be applied robotically; contractual terms should be read in context "to give effect to the intention of the makers of the instrument." *Florey v. Meeker,* 194 Or. 257, 240 P.2d 1177, 1189 (1952).

**3.** We note in passing that the singular article "a" is arguably not the singular "number" referred to in Article 17C of the Amended Declaration.

parties have two competing versions of the truth, and therefore a disputed issue of material fact remains.

**D. The Owner Cannot Avoid the Regulations by Neglecting to Post Them**

[¶ 16] The trial court determined that the provision in Schedule A–1 requiring approval of five Association members related only to changes in the regulations of the swimming area, and not the attachment of a second dock. Because the Lodge owner never posted any swimming regulations, the court found that it was not required to obtain approval before moving the swimming area.

[¶ 17] We find this interpretation of the relevant language in Schedule A–1 to be unpersuasive. The relevant language provides:

> The Owner of the Main Lodge Lot shall establish regulations controlling the use and enjoyment of the beach for all parties entitled to use the same, including designating areas of use for boating, bathing, sunbathing and picnicking, provided regulations shall be posted on or near the beach area, and may be changed from time to time, so long as ratified by owners of at least five (5) of the condominium units.

[¶ 18] This section plainly indicates that the establishment of "regulations" includes the designation of areas for boating and swimming. The second part of the operative sentence can only logically be read to require the Lodge owner to post regulations at the beach, and that these regulations (posted or not) may be changed only with the approval of five condominium owners. The reading adopted by the trial court would allow the Lodge owner to avoid the requirement of ratification by the condominium unit owners by simply neglecting its duty to post regulations. This would render the condominium unit own-

ers' right of ratification illusory. *See Leavens v. Metro. Life Ins. Co.*, 135 Me. 365, 371, 197 A. 309, 311 (1938) ("[I]n contracts susceptible of two conflicting constructions, that which accords with good faith and fair-dealing between the parties must be adopted.").

[¶ 19] A question of fact remains as to whether the Lodge owner designated or acquiesced in the designation of boating and swimming areas each season. If this fact is established, and the Lodge owner moved the areas without obtaining the approval of five condominium owners, the Lodge owner may have breached the provisions of the Amended Declaration.

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.