STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET: CV-04-403

*r̄ r̄-Y. -/ ä⁻ C:ρ*

BETH JELIN, et al.,

Plaintiffs

v.

ORDER

NRG BARRIERS, INC., et al.,

Defendants

This case comes before the Court on Defendant NRG Barriers, Inc.'s Motion for Summary Judgment in this Declaratory Judgment action.[1] The sole issue is whether Beth Jelin or NRG has priority over stocks and other assets of Frederick Jelin, Beth Jelin's former husband.

## FACTUAL BACKGROUND

On June 10, 1996, NRG Barriers, Inc., a Delaware corporation with its principal place of business in Maine,[2] obtained a judgment in the Courts of Chancery of the State of Delaware against Frederick T. Jelin in the amount of $809,234.19. On February 21, 2001, Beth Jelin filed for a divorce from Frederick Jelin in the Maine District Court at Biddeford, Maine.

On May 25, 2001, NRG registered its Delaware judgment in New Jersey and obtained a Writ of Execution against Karnak Corporation stock owned by Frederick

---

[1]     Ms. Jelin also filed a Motion to Stay action in this case. That Motion is Denied.

[2]     NRG was formerly owned by William Jelin, Frederick's sibling. Upon William's death, a trust was created to hold the proceeds from the sale of NRG to Johns Manville. William Jelin devised to his sibling, Fred Jelin, certain shares of stock in a number of businesses. One of those businesses is the Karnak Corporation in New Jersey. Others were sold resulting in cash proceeds to the Estate.

Jelin. On August 1, 2001, NRG registered its Delaware judgment in Maine and obtained a Writ of Execution against distributions owed to Frederick Jelin by the Estate of William Jelin. On September 18, 2001, NRG filed its Writ of Execution with the Maine Secretary of State and provided notice of its claim of lien to the Estate of William Jelin pursuant to 14 M.R.S.A. § 4651-A.[3] On January 23, 2002, Beth Jelin obtained an Order of Attachment and Trustee Process in the Divorce action in the amount of $750,000, which she served on the Estate of William Jelin on January 28, 2002.

On March 21, 2002, the parties appeared before the New Jersey court in a dispute concerning the effectuation of a levy on the Karnak stock owned by Frederick Jelin.[4] The New Jersey court declined to rule on the superiority of NRG's interest versus Beth Jelin's interest in child and spousal support. That court placed the Karnak Stock in escrow until the Courts of Maine decide the issues of priority over Frederick Jelin's assets.

On October 2, 2003, in an Interim Order from the Biddeford District Court, Beth Jelin obtained a judgment for child support arrearages in the amount of $104,852.70. On September 7, 2004, the divorce was finalized and the District Court Ordered Frederick to pay spousal support and child support.[5] Since then, Beth has not received any child support or spousal support.[6]

---

[3]    NRG did not notify Beth Jelin.

[4]    Beth Jelin was granted interpleader status.

[5]    When the complaint in this action was filed, Mr. Jelin owed $177,274.02 to Ms. Jelin. Mr. Jelin has not paid any support to Ms. Jelin.

[6]    The divorce court noted that Frederick did not file a child support affidavit or a financial statement pursuant to M.R. Civ. P. 80(c) despite warnings from the court. Furthermore, it drew an adverse inference from Frederick's failure to file these required documents; that being that he has substantial income and assets well beyond that discussed in the Interim Order and that he has chosen not to disclose them to the court or to the plaintiff.

Beth Jelin contends that her attorney notified NRG of the filing of the divorce in May 2001, before NRG perfected its interest in September 2001, to inform it that preliminary injunctions were in place. (Pl. SMF ¶ 2). NRG argues that the date of the filing of the divorce is irrelevant to the issue in this case. (Def. Final Reply SMF ¶ 2).

The parties dispute when Beth Jelin served the Estate of William Jelin with a copy of the Writ of Execution she obtained on January 23, 2002 in the divorce action. NRG claims that Beth Jelin waited 60 days from the entry of judgment to serve the Estate, and therefore did not preserve her trustee process rights (Def. SMF ¶¶ 7, 8). Beth Jelin maintains that she served the Estate within 30 days, as required under 14 M.R.S.A. § 2956. (Pl. SMF ¶¶ 7, 8). Her denial is supported by the affidavit of Dana Prescott and a letter from Harold Pachios, personal representative of the Estate, admitting as much.

Beth Jelin finally argues that NRG has acted in bath faith by, inter alia, not notifying her of the collection activities. (Pl. Reply SMF ¶ 3).[7] NRG argued at hearing that because M.R. Civ. P. 56 does not provide for this kind of Reply, the Court should not consider it.

Finally, NRG claims, and Beth Jelin denies, that Frederick Jelin received the Karnak stock by gift from his father and it was not marital property. (Def. SMF ¶ 4).

In opposition to NRG's Motion for Summary Judgment, Beth Jelin argues that when she filed her divorce action in May 2001, and subsequently notified NRG of this, the preliminary injunction ordered pursuant to 19-A M.R.S.A. § 903 gave Beth Jelin and her children a priority interest in all of Fed Jelin's assets. She further argues that, as a

---

[7] Beth Jelin contends that NRG seized a California home owned jointly by Beth and Frederick Jelin and sold it for less than the fair market value. She also asserts that she asked NRG to notify her of any action to be taken by them against Frederick Jelin's assets.

matter of public policy, protecting a spouse's interest in child and spousal support supercedes the rights of other creditors, particularly when such creditors acted in bad faith. In response, NRG argues that by filing its lien with the State of Maine on September 18, 2001, it perfected its interest in the Maine assets, thus establishing its priority over any claim Beth Jelin may have pursuant to 14 M.R.S.A. § 4651-A.

## DISCUSSION

In reviewing a motion for summary judgment, the Court must examine the evidence in the light most favorable to the nonmoving party "to determine whether the parties' statements of material facts and the referenced record material reveal a genuine issue of material fact." *Rogers v. Jackson*, 2002 ME 140, ¶ 5, 804 A.2d 379, 380. A material fact is one that could potentially affect the outcome of the suit. *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ ¶, 878 A.2d 504, 507. A genuine issue of material fact exists when the evidence requires a fact-finder to choose between competing versions of the truth. *Id.* Absent a genuine issue of material fact, the Court determines whether the prevailing party is entitled to judgment as a matter of law. *Id.*

a. <u>Preliminary Injunction in a Divorce.</u>

Upon the filing of a divorce, the court issues an automatic preliminary injunction pursuant to 19-A M.R.S.A. § 903 in order to restrain "<u>both parties</u> from selling or disposing of property without the consent of the other party while the divorce proceedings [are] pending."[8] *Desjardins v. Desjardins*, 2005 ME 77, ¶ 2, 876 A.2d 26, 27 (emphasis added). In this case, the party Beth Jelin is seeking to restrain was not a party to her divorce, but rather a third party creditor. The preliminary injunction only applies

---

[8] To help insure the preservation of the marital assets for equitable distribution, the Maine legislature provided that when a petition for divorce is filed, a standard preliminary injunction will issue, preventing either spouse, during the course of the divorce proceeding, from "transferring, encumbering, selling, or otherwise disposing of the property of either or both of the parties, except in the usual course of business or for the necessities of life." 19-A M.R.S.A. § 903(1)(B)(1).

4

to restrain the divorcing parties from selling or disposing property. It does not function to prohibit a creditor from collecting a valid debt during a pending divorce.

b.     The Significance of Filing a Divorce Petition under Maine Law.

An execution lien on personal property is created by filing an attested copy of an execution with the Secretary of State within one year after its issuance, unless the property is exempt from attachment and execution. 14 M.R.S. § 4651-A. Notwithstanding NRG's compliance with Maine law regarding the perfection of its interest in Frederick Jelin's assets in Maine, Beth Jelin is asking the Court to recognize that upon the filing of her divorce action, she has a priority over the Frederick Jelin's assets. This is an issue of first impression in Maine. Although the Law Court has not specifically addressed this issue, Beth Jelin directs this Court to decisions of the Court of Appeals for the First Circuit for guidance. See *Davis v. Cox*, 356 F.3d 76, 91 (1st Cir. 2004); *American Guarantee & Liability Insurance Co. v. Keiter, et als.*, 360 F.3d 13,16 (1st Cir. 2004).

In *Davis v. Cox*, the First Circuit found that during his divorce proceedings, Cox had engaged in a pattern of misconduct by misapplying marital assets to his own use in disobedience of the court's preliminary injunction and interim order, and that Davis had exhausted all her options under the law to secure those assets. *Davis*, 356 F.3d at 89. In an extrapolation from basic Maine divorce law principles, the court determined that "after a divorce proceeding has commenced the Maine courts will afford such reasonable protection as may be required to ensure that a non-owner spouse's rights to equitable distribution are not thwarted by the <u>owner spouse</u> prior to the time the court can issue its divorce decree dividing the property." *Id.* at 88 (emphasis added). Thus, the court ruled that Cox held an Advest IRA upon a constructive trust for Davis with

the precise scope of her beneficial interest to be ultimately determined by the divorce court. *Id.* at 89.

While the First Circuit stated that once a divorce petition is filed each spouse is deemed to have a beneficial interest in marital property to which the other spouse holds legal title, this statement cannot be understood in a vacuum. See *Davis*, 356 F.3d at 89. For clarification, the court firmly emphasized that this holding was specifically limited to these particular facts and Cox's contemptuous behavior before the filing for bankruptcy. *Id.* at 84.

In this case, even if the Law Court were to follow the limited rule established in *Davis v. Cox*, the facts before this Court are different and warrant a different result. The parties in *Davis* were two divorcing spouses, whereas this case involves a divorced spouse and a third party creditor.[9] Unlike the defendant in *Davis*, who engaged in blatant misconduct during his divorce proceeding, here there is no competent evidence that the Defendant NRG has engaged in contemptuous behavior. Finally, the purpose of the First Circuit's limited rule was to protect a non-owner spouse's rights to equitable distribution from being thwarted by the <u>owner spouse</u> prior to the time the court can issue its divorce decree dividing the property. *Davis*, 356 F.3d at 88 (emphasis added). In this case, NRG is not an owner spouse and has not attempted to thwart Beth Jelin's right to an equitable distribution of property in the divorce action. As a judgment creditor, NRG is fully within its rights in seeking satisfaction of the judgment.

Although not controlling, NRG's position is further supported by a recent amendment to 19-A M.R.S.A. § 953 (6-A)(2005). This 2005 legislation provides:

---

[9]    Beth Jelin asserts that NRG engaged in misconduct by allegedly foreclosing on and selling a California home the parties owned for $300,000 less than fair market value and by refusing to notify Beth Jelin of their actions. However, the commercial reasonableness of the sale of the California home is a matter for the California courts. Furthermore, NRG had no legal obligation to notify Beth Jelin of its actions because Beth Jelin is not the debtor.

6

After the filing of a divorce complaint under section 901, a nonowner spouse has an inchoate equitable interest, without the need to obtain an attachment, levy or court order, in the individual retirement account or similar plan or contract on account of illness, disability, death, age or length of service of the owner spouse to the extent the account or plan is either exempt or beyond the reach of an attaching or judgment lien creditor under the state or federal law.

19-A M.R.S.A. § 953 (6-A).

The Legislature considered creating inchoate equitable interests in the owner spouse's property upon the filing of a divorce and limited them to IRA or other similar accounts. The Legislature could have enacted a broader law stating that upon the filing of a divorce, the nonowner spouse obtains an inchoate equitable interest in all property to be divided by the divorce court. See Kan. Stat. Ann. 23-201(b).[10] It chose a more limited approach.

This Court recognizes that Maine has a strong public policy favoring protection of dependent spouses and children. See 19-A M.R.S.A. § 2202(1);[11] *Dep't of Human Servs. v. Hafford*, 2003 ME 15, 815 A.2d 806. The Court also recognizes and sympathizes with Beth Jelin's struggle to secure Frederick Jelin's assets to best provide for herself and her

---

[10]    The Kansas statute reads in pertinent part:

All property owned by married persons, . . . whether held individually or by the spouses in some form of co-ownership, such as joint tenancy or tenancy in common, shall become marital property at the time of commencement by one spouse against the other of an action in which a final decree is entered for divorce . . . . Each spouse has a common ownership in marital property which vests at the time of commencement of such action, the extent of the vested interest to be determined and finalized by the court, pursuant to K.S.A. 60-1610 and amendments thereto.

Kan. Stat. Ann. 23-201(b).

[11]    19-A M.R.S.A. § 2202(1) provides:

1. PURPOSE. The Legislature finds and declares that child support is a basic legal right of the State's parents and children, that mothers and fathers have a legal obligation to provide financial support for their children and that child support payments can have a substantial impact on child poverty and state welfare expenditures. It is therefore the Legislature's intent to encourage payment of child support to decrease overall costs to the State's taxpayers while increasing the amount of financial support collected for the State's children. The department is authorized to initiate action under this section against individuals who are not in compliance with an order of support.

7

children. After all, it has been Mr. Jelin's untoward behavior that led to the Delaware judgment against him and his failure to meet his support obligations that led to the Maine judgment against him. She and the children bear no responsibility for his behavior. However, in this case, NRG's rights as a judgment creditor vested before those of Ms. Jelin.

The entry will be as follows:

NRG's Motion for Summary Judgment is Granted.

Dated: January 27 2006

G. Arthur Brennan
Justice, Superior Court

STATE OF MAINE
YORK, ss.

SUPERIOR COURT
LOCATION: YORK
CIVIL ACTION
DOCKET NO. *CV-04-403*

BETH M. JELIN, individually
and on behalf of her three minor
Children,

      JOSHUA P. JELIN
      (d.o.b. 1/27/87)

      M. SAMUEL JELIN
      (d.o.b. 5/17/90)

      JAMES H. JELIN
      (d.o.b. 7/29/94

      Plaintiffs

v.

      NRG BARRIERS, INC.

      Defendant

      FREDERICK T. JELIN

      Party in Interest

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER GRANTING SUMMARY
JUDGMENT IN FAVOR OF
NRG BARRIERS, INC.

      Based upon the pleadings, Affidavit and filings submitted by the parties, and

following notice and hearing the Court entered the following ruling and order in this Declaratory

Judgment Action:

     1)     The minor children of Beth Jelin, Joshua, M. Samuel and James Jelin, are hereby
          dismissed as parties, and summary judgment entered against them in favor of
          NRG Barriers, Inc. ("NRG") since said children hold no judgment, lien or other
          claim giving them a justiciable issue regarding the property of Frederick Jelin.

2) The lien position and entitlement to the turnover of property and stock of Frederick Jelin held in escrow by the Estate of William Jelin is superior in right to that of Beth Jelin. If, following liquidation and application of the aforesaid property, the Judgment of NRG is satisfied, and proceeds remaining shall be turned over to Beth Jelin for application on her Judgment.

3) NRG has a valid and enforceable first right to the turnover and proceeds of Karnak Corporation and Karnak-South stock held in escrow under the jurisdiction of the Courts of New Jersey. Nothing in the divorce action of Jelin v. Jelin, Biddeford District Court (District 10), Docket No. FM-01-73, or any orders entered therein, gives Beth Jelin any liens or rights in said stock superior to NRG.

Dated:

_____
Judge, Superior Court

Beth M. Jelin, Indiv. & o/b/o
Joshua P. Jelin, M. Samuel Jelin & James H. Jelin - PLS - Pro se
U. Charles Remmel, Esq. - DEF. NRG Barriers, Inc.
Harold Pachios, Esq. - DEFS. William S. Jelin, Irrevocable Trust & Estate of William
                                                                S. Jelin
Frederick T. Jelin - Party-in-Interest - Pro se