2008 ME 20

**Petr IVANOV**

v.

**PHENIX MUTUAL FIRE INSURANCE COMPANY.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Dec. 11, 2007.

Decided: Jan. 31, 2008.

Paul Boots, Esq., Law Offices of Paul Boots, Esq., Portland, ME, for Petr Ivanov.

Lance E. Walker, Esq., Norman, Hanson & DeTroy, LLC, Portland, ME, for Phenix Mutual Fire Insurance Company.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, MEAD, and GORMAN, JJ.

GORMAN, J.

[¶ 1]  Petr Ivanov appeals from a summary judgment entered in the Superior Court (Cumberland County, *Cole, J.*) in favor of Phenix Mutual Fire Insurance Company on Ivanov's complaint alleging breach of contract.  Ivanov argues that there are genuine issues of material fact regarding the knowledge of the agent who sold Ivanov his insurance policy and the circumstances under which the policy was selected and sold.  We agree and vacate the judgment.

## I.  BACKGROUND

[¶ 2]  In April 2003, Iouri Tchestnov purchased a property in Naples on behalf of his son-in-law, Petr Ivanov, for whom he holds a power of attorney.  Petr Ivanov is a Russian citizen who lives in Russia.  His father-in-law, Iouri Tchestnov, resides in Maine, and is a U.S. citizen.  Tchestnov planned to live with his daughter and son-in-law at the property after they arrived from Russia and after renovations were complete.  Throughout the renovation process, Tchestnov lived in an apartment in Portland, but because he completed some of the work himself, he spent many nights during the summer at the Naples property.

[¶ 3]  In December 2003, Tchestnov obtained insurance coverage for the property on behalf of Ivanov through Southern Maine Insurance Agency.  This first policy was a builder's risk policy sold by Zurich Assurance Company of America.  When that policy expired, an insurance agent

from Southern Maine Insurance Agency contacted Tchestnov and told him he needed to increase his coverage. Tchestnov agreed and a second policy was issued; this second policy, issued by Phenix Mutual Fire Insurance Company, was a homeowner's policy rather than a builder's risk policy.

[¶ 4] The Naples property was destroyed by fire on or around February 15, 2005. Tchestnov filed a claim, but Phenix denied coverage because the Naples property was not used as a residence and, therefore, the homeowner's insurance policy did not cover the loss.[1]

[¶ 5] Tchestnov filed a complaint against Phenix, on behalf of Ivanov, alleging breach of contract for Phenix's failure to pay the claim pursuant to the insurance contract between the parties. Phenix then moved for summary judgment.

[¶ 6] In its statement of material facts, Phenix asserted that Tchestnov was not entitled to make a claim under the policy because he was not the named insured, because neither he nor Ivanov ever resided at the Naples property, and because the homeowner's policy covered only fire loss of the "residence premises" where the named insured actually resided.

[¶ 7] In his response to Phenix's statement of material facts, Tchestnov asserted: (1) his insurance agent told him to increase the policy coverage; (2) he had never notified his agent that renovations were complete and did not discuss whether anyone was residing at the property; (3) he understood only that the amount, and not the type, of coverage had changed; (4) he understood that the property was insured while it was being renovated; (5) he relied on the insurance agent to select the appro-

priate policy; and (6) he does not speak English and was unable to discuss the details of the coverage with his agent. Phenix replied to Ivanov's statement of material facts, denying many of his assertions.

[¶ 8] The court granted Phenix's motion for summary judgment, finding that "residence premises" is an unambiguous term in the contract and that there was no genuine issue of material fact regarding whether the Naples property was ever Ivanov's residence. Ivanov filed this timely appeal.

## II. DISCUSSION

[¶ 9] We review de novo an entry of summary judgment and take all of the facts in the light most favorable to the non-moving party. *Penn v. FMC Corp.*, 2006 ME 87, ¶ 6, 901 A.2d 814, 815. Additionally, according to M.R. Civ. P. 56(c), summary judgment is appropriate only when:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the statements [of material fact] show that there is no genuine issue as to any material fact set forth in those statements and that any party is entitled to a judgment as a matter of law.

We find that a genuine issue of fact exists when "the evidence requires a factfinder to choose between competing versions of the truth." *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504, 507. A material fact exists when the fact could affect the outcome. *Id.*

[¶ 10] Ivanov argues that the real issue in this case concerns the circum-

---

1. This fact is not provided in the record explicitly, but is referenced throughout and is clearly the basis of the claim.

stances under which the second policy was obtained, and not whether anyone lived at the Naples property at the time of the fire. We agree. The record demonstrates that there are unresolved issues of material fact concerning what information Tchestnov provided to the agent at the time Phenix issued its policy, what the agent disclosed to Tchestnov, why the policy was changed from a builder's risk policy to a homeowner's policy and who made that decision, and what the status of the property was at the time of the policy change. Tchestnov asserts that all of the decisions concerning the new policy were made by the agent. Phenix denies those assertions.

[¶ 11] In this case, although Ivanov does not argue for reformation of the insurance contract explicitly, he does argue that the coverage extends beyond the actual language of the homeowner's policy based on what the agent understood about the facts of the situation and the coverage Tchestnov sought. Because there are genuine issues of material fact that should be heard by a fact-finder, we must vacate the judgment and remand the case for trial.

[¶ 12] As noted above, Tchestnov's lack of fluency in English is a disputed issue in this case. We therefore take this opportunity to discuss the use of interpreters in pretrial proceedings. When Tchestnov was deposed on April 5, 2005, an interpreter was used. The interpreter, although identified, was not sworn before he began his work, and was not questioned about his qualifications or any possible conflicts. Throughout the deposition, the interpreter alternated between referring to Tchestnov in the third person, and simply speaking as though he were Tchestnov, which created some ambiguities.[2] In addition, on at least one occasion, the interpreter admitted that he had not translated what Tchestnov had actually said stating that he was "trying to explain" something Tchestnov had said.

[¶ 13] Just as judicial officers need to monitor interpreters during trials, attorneys must monitor interpreters during depositions. Each interpreter should be sworn,[3] and the interpreter's qualifications should be placed on the record. If there are long periods when the interpreter is not interpreting, if the length of testimony is not proportionate to the interpretation, or if the interpreter appears to be coaching or encouraging the party to answer in a certain way, the attorneys

---

**2.** For example, this colloquy at pages 5 and 6 of the deposition transcript:

Q. Who provided the money for the purchase of the house?

A. We are one family and we do not strictly divide our finances. Some of the money came from Peter [sic], but most part came from myself because I was working sometime [sic] in the U.S. and had some funds.

Q. Okay. Where were the funds located that you used to pay for the house? What bank account?

A. He had some funds in cash. He got his cash through Peoples Heritage Bank and got a bank check. Yeah, in the Forest Avenue branch.

Q. How much money did you contribute to the purchase price of the house?

INTERPRETER: You mean him?

[ATTORNEY]: Personally, yes.

A. He doesn't have an exact amount because he was—at the same time he was buying him a car, but he thinks it was about 12,000.

Q. And how much did Peter [sic] Ivanov contribute?

A. He was sending—he was sending him funds several times. One time he sent 3,000 another time he sent 2,000 in total for 20,000.

**3.** An appropriate oath should track the following language: "Do you solemnly swear or affirm that you will truly and correctly interpret or translate all of the proceedings in this deposition into [the language] and you will repeat the statements made in [the language] into English to the best of your skill (so help you God)?"

involved in the deposition should address and correct the problem. The attorneys should remind the interpreter that she/he is required to interpret everything that is being said, without omitting, subtracting, editing or summarizing, and that the interpreter must always interpret in the first person when the witness or defendant is speaking. The attorneys should interject if the interpreter says, "he said," or "she said," as the third person is to be used only when the interpreter is speaking for him or herself. Careful compliance with these guidelines will result in an accurate record.

The entry is:

Summary judgment vacated. Case remanded for trial.