STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO. RE 18-182

WILLIAM MILLER, PERSONAL              )
REPRESENTATIVE OF THE                 )
ESTATE OF GAIL CHANDLER               )
MILLER,                               )
                                      )
                Plaintiff,            )    ORDER ON PLAINTIFF'S MOTION FOR
                                      )    SUMMARY JUDGMENT
        v.                            )
                                      )
JOSEPH A. LOUGHRAN, JR.               )
                                      )
                Defendant.            )
                                      )

Before the court is Plaintiff's Motion for Summary Judgment against Defendant

Joseph Loughran. This matter arises from a dispute over the disposition of non-probate

property following the death of Gail Chandler Miller on December 21, 2017. (Add. S.M.F.

¶ 2.) Plaintiff William Miller, as Personal Representative of the Estate of Gail Chandler

Miller, initiated this action against Defendant Joseph Loughran, Ms. Miller's registered

domestic partner. Plaintiff alleges that Mr. Loughran has failed to comply with two 2004

written agreements regarding the disposition of jointly held property and allocation of

debt. Plaintiff also asserts that shortly before her death, Mr. Loughran induced Ms. Miller

to change the beneficiary designation on her insurance policy from her children and

grandchild to Mr. Loughran.

For the following reasons, Plaintiff's Motion for Summary Judgment is denied.

## I.   Summary Judgment Factual Record

Gail Miller and Joseph Loughran began a relationship in 1982. They lived together

from 1985 until her death in 2017. They registered as domestic partners in 2004. (Supp'g

S.M.F. ¶ 1.; Add. S.M.F. ¶ 1.) Each of them had children from prior marriages. (Add.

For Plaintiff: James Audiffred, Esq.          For Defendant: C Alan Beagle, Esq.

1

S.M.F. ¶¶ 1-3.) Ms. Miller's children are Christine Miller and William ("Bill") Miller. (Add. S.M.F. ¶ 3.)

Ms. Miller and Mr. Loughran purchased a residence in Gorham in 1996. They later purchased a camp in Eustis in 2003. (Add. S.M.F. ¶¶ 46-47.) They were jointly responsible for the mortgages on each of the properties. *Id.* Contemporaneous with registering their domestic partnership in 2004, Ms. Miller and Mr. Loughran executed two signed and notarized documents, one regarding the couple's Gorham home and Eustis camp (hereinafter the "2004 Real Estate Agreement"), and the other regarding various debts owed by Mr. Loughran to Ms. Miller (hereinafter the "2004 Debt Reconciliation Statement"). (Add. S.M.F. ¶ 9.) Mr. Loughran continues to reside in the Gorham home. (Add. S.M.F. ¶ 5.)

Ms. Miller's health began to deteriorate in April 2017, when she broke her leg in a skiing accident. (Add. S.M.F. ¶ 26.) In June of that year, she fell and broke her hip. (Add. S.M.F. ¶ 27.) Each of these accidents rendered Ms. Miller temporarily immobile, and Mr. Loughran provided her care and transportation during the several months of her rehabilitation. (Add. S.M.F. ¶ 28.) In early October 2017, Ms. Miller had a biopsy which disclosed that she had mesothelioma and soon began chemotherapy treatment. (Add. S.M.F. ¶ 30-31.)

On or about November 3, 2017, Ms. Miller changed the beneficiary designation on an annuity she had purchased from the Jackson National Life Insurance Company in 2010 (hereinafter the "Jackson Annuity"), valued at her death at $323,000, from her children, Bill and Christine Miller, and her grandson, to Defendant Joseph Loughran. (Add. S.M.F. ¶ 32.)

Ms. Miller died on December 21, 2017. (Add. S.M.F. ¶ 2.) Her will, dated June 23, 1989, was submitted to probate. (Add. S.M.F. ¶ 38.) Bill Miller and Christine Miller were

2

named as co-personal representatives, and equal devisees under her will. (Add. S.M.F. ¶ 39.)

On July 20, 2018, Plaintiff filed a Complaint for Declaratory Judgment against Defendant Loughran seeking a declaration that: (1) the 2004 written agreements require Mr. Loughran to share with Ms. Miller's estate, one-half the appraised value of the couples jointly owned Gorham residence and Eustis camp, as well as all money or property that was owed by the Defendant to Ms. Miller at the time of her death; (2) Mr. Loughran be required to deliver to the Plaintiff all money and personal property owed to and belonging to Ms. Miller at the time of her death, including those items the Defendant characterizes as gifts of jewelry that he gave to Ms. Miller; and, (3) the change in beneficiaries to the Jackson Annuity from Ms. Miller's son, daughter, and grandson to Mr. Loughran was the product of undue influence and should be voided pursuant to Maine's Improvident Transfers of Title Act, 33 M.R.S. §§ 1021-1025.

On April 22, 2020, Plaintiff filed the pending Motion for Summary Judgment and a "Statement of Material Facts Not in Issue." Defendant filed an "Opposing Statement of Material Facts Not in Issue" on July 10, 2020, along with "Defendant's Statement of Additional Material Facts Submitted Per Rule 56(h)(2)." Plaintiff filed "Plaintiff's Response to Defendant's Statement of Additional Facts" on July 27, 2020.

## II. Standard of Review

A party is entitled to summary judgment when review of the parties' statements of material facts and the record to which the statements refer demonstrate that there is no genuine issue as to any material fact in dispute, and that the moving party is entitled to judgment as a matter of law. *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821; M.R. Civ. P. 56(c). A contested fact is "material" if it could potentially affect the outcome of the case. *Id.* A "genuine issue" of material fact exists if the claimed fact would require

3

a factfinder to "choose between competing versions of the truth." *Id.* (quoting *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504).

When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.* A party opposing a summary judgment motion must establish a prima facie case for each element of his or her claims. *Tri-Town Marine, Inc. v. J.C. Milliken Agency, Inc.*, 2007 ME 67, ¶ 7, 924 A.2d 1066. The evidence offered in support of a genuine issue of material fact "need not be persuasive at that stage, but the evidence must be sufficient to allow a fact-finder to make a factual determination without speculating."[1] *Estate of Smith v. Cumberland Cty.*, 2013 ME 13, ¶ 19, 60 A.3d 759.

## III. Discussion

### A. The 2004 Real Estate Agreement

Plaintiff asserts that the 2004 Real Estate Agreement covers not only the house in Gorham and camp in Eustis, but all of the couple's jointly owned property, which Plaintiff argues includes a joint account with Discover Bank. (Supp. S.M.F. ¶ 9.) Defendant maintains that the agreement pertains only to the jointly owned real property. (Opp. S.M.F. ¶ 4.) Defendant also disputes Plaintiff's characterization of his present obligations under the agreement and argues that he is no longer bound by the agreement because Ms. Miller and he orally agreed to rescind it.

---

[1] Each party's statements must include a reference to the record where "facts as would be admissible in evidence" may be found. M.R. Civ. P. 56(e). A party's opposing statement of material facts "must explicitly admit, deny or qualify facts by reference to each numbered paragraph, and a denial or qualification must be supported by a record citation." *Stanley v. Hancock Cty. Comm'r*, 2004 ME 157, ¶ 13, 864 A.2d 169.

### 1. Scope of the 2004 Real Estate Agreement

The agreement begins with the following language: "It is our intent that our families share equally in the inheritance of money or property owned jointly by us, Joseph A. Loughran and Gail C. Miller at the time of death of either partner. Half should go to Joe's children and half to Gail's children." (Pl.'s Ex. 3.) Despite this reference to "money," the only items of jointly owned property that are specifically mentioned in the agreement are the two real properties that the couple shared, namely the Gorham home and Eustis camp. (Pl.'s Ex. 3.)[2]

"The interpretation of ambiguous language in a contract . . . is a question of fact." *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, 878 A.2d 504, 507. Because the language of the agreement is reasonably susceptible to different interpretations as to whether the Discover Bank account (or any other jointly held property) was intended to be included under the agreement, summary judgment is denied with respect to the Discover Bank account balance.

### 2. Present Enforceability of the 2004 Real Estate Agreement

Plaintiff also alleges that Mr. Loughran has failed to meet the conditions of continuing to reside in the Gorham home, as provided in the agreement. (Supp'g S.M.F. ¶ 5.) The agreement states that "[a]ny real estate held in joint name will be appraised by a licensed appraiser within 6 months and a market value of the property shall be

---

[2] With regard to any joint bank accounts they held, Mr. Loughran points to 18-C M.R.S. § 6-212, which provides that "on death of a party sums on deposit in a multiple-party account belong to the surviving party or parties." Defendant contends that upon Ms. Miller's death, the Discover Bank account balance became his sole property. (Opp. S.M.F. ¶ 9.)

established as of the date of death." (Pl.'s Ex. 3.) The document further provides, in relevant part:

> 6. If the surviving partner chooses to retain the property he/she will have the option of
> A. Paying to his/her heirs within 12 months any funds owed from the deceased.
> B. Giving a note to the heirs that is to be paid at the time of sale of the property or death of the second partner.

Defendant asserts that "the payment of the decedent's portion of the value of the real estate need only be paid upon the sale of the property" and after the deduction of costs associated with the sale. (Opp. S.M.F. ¶ 7.)[3] In addition, Defendant claims that the 2004 Real Estate Agreement is no longer in effect because Ms. Miller had voided the agreement prior to her death. (Opp. S.M.F. ¶ 16.) In a letter from Mr. Loughran to Bill and Christine Miller, dated February 2, 2018, Mr. Loughran stated, among other things, that he and Ms. Miller had agreed that the Gorham home and Eustis camp would "come to [him] in full with no encumbrances" and that personal property belonging to Ms. Miller that he had purchased or gifted to her would also pass to him. (Supp'g S.M.F. ¶ 5; Pl.'s Ex. 5.) Defendant's Statement of Additional Facts also recites several conversations that allegedly took place between Ms. Miller and Mr. Loughran in the month before her death, during which Ms. Miller allegedly told Mr. Loughran that the properties would come to him "free and clear." (Add. S.M.F. ¶ 35.) Without addressing the admissibility of these statements at this point in the litigation process,[4] the court finds there are genuine issues

---

[3] Without more, this appears to be a mischaracterization of the plain language of the agreement, which states that a note is to be given to the heirs if the surviving partner retains the property and elects option B, even if the note is not required to be paid until the property is later sold or upon the death of the second partner. (Pl.'s Ex. 3.)

[4] "A court is not bound to address every argument put forth by a party when acting on a motion." *Richter v. Ercolini*, 2010 ME 38, ¶ 16, 994 A.2d 404.

of material fact regarding both parties' interpretations of the agreement and whether the Defendant remains bound thereby. Accordingly, summary judgment is denied as to claims pertaining to the 2004 Real Estate Agreement.

### B. 2004 Debt Reconciliation Statement

In Plaintiff's "Statement of Material Facts Not in Issue," Mr. Miller cites to the percentages Mr. Loughran admits to owing on the couple's shared mortgages in the 2004 Debt Reconciliation Statement. In the Statement, which is a signed and notarized affidavit, Mr. Loughran asserts that when he and Ms. Miller refinanced their Gorham residence, they agreed to take out an additional amount so that Mr. Loughran could pay his outstanding bills. (Supp'g S.M.F. ¶ 2; Pl.'s Ex. 2.). He agreed that his share of the mortgage represented 61% of the total amount due. *Id.* He also stated that he had bills and financial obligations that were paid from the home equity loan that the couple used to purchase the Eustis camp, and that his share of that loan was 71%. *Id.*

The 2004 Debt Reconciliation Statement includes other general references to debt that Mr. Loughran admits owing Ms. Miller for improvements to the house and camp, stating that "[h]alf of these costs are my responsibility" and that "[a]ny money she has extended in my behalf is to be repaid." (Pl.'s Ex. 2.) Finally, the Statement references "records" in Ms. Miller's possession "that relate to both the house, the camp and other matters" and provides that "any outstanding debt that is a result of borrowing to cover expenses that were my responsibility shall be paid in full from my estate to Gail Miller prior to any distribution of assets to my heirs. Also any payments made by Gail in my behalf shall be reimbursed to her in full from my estate." (Pl.'s Ex. 2.)

The 2004 Debt Reconciliation Statement does not, however, provide any information as to the amount borrowed to cover Defendant's then-existing bills without making further assumptions. (Opp. S.M.F. ¶ 2.) While Plaintiff suggests that Mr.

7

Loughran may have destroyed Ms. Miller's records detailing the amounts he owed, this assertion is, at best, speculative at this point. Defendant raises additional concerns, pointing to the final paragraph of the Statement, that any money borrowed from Ms. Miller by Mr. Loughran which was unpaid at her death "shall be paid in full from my estate to Gail Miller prior to any distribution of assets to my heirs." (Pl.'s Ex. 2.)

Whether Mr. Loughran has any present obligations under the agreement and what, if any, amount may be due Plaintiff remains in dispute and present genuine issues of material fact. Accordingly, summary judgment with respect to the 2004 Debt Reconciliation Statement is denied.

C. Undue Influence

Plaintiff's last claim is that Ms. Miller's execution of the change in beneficiary form for the Jackson Annuity creates a presumption of undue influence under the Improvident Transfers of Title Act, 33 M.R.S. §§ 1021-1025, and should therefore be voided.

The Improvident Transfers of Title Act "protects elderly individuals against making transfers of property as a result of undue influence." *McCollor v. McCollor*, 2014 ME 39, ¶ 11, 87 A.3d 761. The Act establishes a rebuttable presumption of undue influence when an elderly dependent person makes a transfer to a person with whom he or she has a confidential or fiduciary relationship, providing that:

> In any transfer of real estate or major transfer of personal property or money for less than full consideration or execution of a guaranty by an elderly person who is dependent on others to a person with whom the elderly dependent person has a confidential or fiduciary relationship, it is presumed that the transfer or execution was the result of undue influence, unless the elderly dependent person was represented in the transfer or execution by independent counsel.

33 M.R.S. §§ 1021(1).

In addition to establishing that there is an absence of disputed facts as to each element required for the statutory presumption to arise, a plaintiff must also establish that there

are no disputed facts concerning the claims raised by the defendant to rebut the presumption. *See Doyle v. Duquette*, No. RE-06-044, 2008 Me. Super. LEXIS 188, *5. Defendant's position is that he did not induce Ms. Miller to change the beneficiary on the Jackson Annuity, and that she in fact changed the beneficiary on her own accord and without his knowledge. (Loughran Aff. ¶ 74.)

Whether Plaintiff has raised a presumption of undue influence and whether Defendant has raised genuine issues of material fact that successfully rebut the presumption, will require further development and analysis of the facts. At this point, the record does not demonstrate, as a matter of law, that Ms. Miller was unduly influenced by Mr. Loughran. Accordingly, summary judgment is denied on Count III of the Plaintiff's Complaint for Declaratory Judgment.

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: __10/26/2020__

__MaryGay Kennedy, Justice__
Maine Superior Court

**Entered on the Docket:** 10/27/2020

9

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-18-182

WILLIAM R. MILLER, Personal
Representative of the Estate of Gail
Chandler Miller,

Plaintiff

v.

JOSEPH A. LOUGHRAN, JR.,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER

STATE OF MAINE
Cumberland ss Clerk's Office
APR 25 2019  4:05PM
RECEIVED

Before the court are (1) an application for entry of default against the plaintiff Estate of Gail Miller on defendant Joseph Loughran's counterclaim, followed up by a motion by Loughran to direct the clerk to enter that default, (2) the Estate's motion to vacate the default (although the default has not been entered), and (3) a motion by the Estate to dismiss Loughran's counterclaim.

Procedural History

Loughran filed his answer to the complaint, including a counterclaim against the Estate, on January 18, 2019 and apparently served the answer and counterclaim on the same date. Pursuant to M.R.Civ.P. 12(a) the Estate was required to serve its reply to the counterclaim on or before February 7, 2019.

On February 14, 2019 Loughran, because no response to the counterclaim had been received, filed an application for entry of default on the counterclaim and an application for entry of a default judgment in the amount of $ 90,768.12.

Plaintiff-James Audiffred, Esq.
Defendant-C Alan Beagle, Esq.

On February 21, 2019 the Estate filed a motion to vacate the default, apparently assuming that a default had been entered. The motion included various exhibits including an unsigned draft answer to the counterclaim dated January 30, 2019. That draft included the affirmative defense that Loughran owed money to the estate by way of set-off. With the unsigned draft answer were an unsigned certificate of service by mail and an unsigned cover letter to the court, both also dated January 30, 2019.

Accompanying the motion was an affidavit by Lea Tranchemontagne, legal assistant to counsel for plaintiff, who stated that an answer to the counterclaim had been prepared and dated on January 30, 2019 and placed in a pile for signature and mailing.[1] Tranchemontagne's affidavit states that it is uncertain why the answer was not received by counsel for Loughran or by the court and suggests the possibility of clerical error or that the mail was lost.

On March 11 counsel for Loughran opposed the motion to vacate and sought an order directing the clerk to enter the default. On March 18 counsel for the Estate filed an opposition to Loughran's March 11 motion and a signed copy of the answer to counterclaim that had previously only been filed as an unsigned attachment on February 21. Thereafter on March 22 counsel for the Estate filed an amended answer to the counterclaim, adding a statute of frauds defense and a defense that Loughran had failed to file a claim against Gail Miller's estate. On the same date counsel for the Estate filed a motion to dismiss the counterclaim based in the statute of frauds.

---

[1] Tranchemontagne's affidavit stated that the answer, certificate of service, and cover letter were attached as exhibits but the copy of the affidavit filed with the court did not have any exhibits attached. However, as noted above, unsigned copies of those documents were attached to the motion to vacate.

<u>Application for Default</u>

Loughran argues that he was entitled to an entry of default when he filed an application for entry of a default at a time when no response to the counterclaim had been filed. This may be true but the clerk's office is not required and does not have the ability to immediately enter a default the moment an application is filed.[2] Some delay resulted in this case because the case was originally assigned to Justice Walker and is waiting to be assigned to the justice who succeeds to his single justice assignments in Cumberland. Moreover, Loughran was also seeking the entry of a default judgment, and the latter can only be entered by the clerk if the amount sought is for a sum certain or for a sum that can be made certain and upon affidavit of the amount due. In this case the amount sought in the application for a default judgment was greater than the amount stated in the counterclaim, and the court would not accept a conclusory attorney's affidavit as to the amount due.

Before any default was entered, the Estate had filed its motion to vacate, and the practice of the clerk's office in the Cumberland Superior Court is to refer the file to a judge if there is a response from the allegedly defaulting party. In this case, although the Estate's motion to vacate the default was premature, it has been fully briefed and the court sees no reason to have the default entered and then have the Estate refile its motion.

Assuming that a default had been entered, the question of whether it should be set aside depends on whether a sufficient excuse for the default has been shown and whether a potentially meritorious defense has been shown. *Richter v. Ercolini*, 2010 ME 38 ¶ 15, 994 A.2d 404.

---

[2] There is authority for the proposition that entry of default by the clerk is a ministerial act. However, parties are not entitled to default judgments as a matter of right. <u>See</u> 10A C. Wright, A. Miller & M. Kane, <u>Federal Practice and Procedure:  Civil 3d</u> §2685 at 31 (1998) (discussing Federal rule identical in all material respects to M.R.Civ.P. 55).

3

As a general matter the court adheres to the principle that defaults should be set aside where no "gross neglect" was involved in the late filing and where no prejudice has been shown. *E.g., Thomas v. Thompson*, 653 A.2d 417, 420 (Me. 1995). This is consistent with the strong preference for deciding cases on their merits, *see id.,* and the rule that doubts should be resolved in favor of setting aside a default so that the merits may be heard. 3 C. Harvey, Maine Civil Practice § 55:7 (2011).

In this case what appears to have been a failure by counsel to mail the Estate's answer to the counterclaim does not arise to the level of gross neglect. Despite the failure in this case, it appears from the Tranchemontagne affidavit that counsel for the Estate had a procedure to meet filing deadlines. In addition, the Estate responded with the motion to vacate within two weeks of its initial deadline and within a week after it received notice that Loughran was seeking a default. Loughran has not identified any prejudice that he experienced as a result of the relatively short delay before the Estate filed its motion to vacate with its draft answer.

Moreover, the Estate's defense of setoff, as set forth in its motion to vacate, meets the low threshold for a potentially meritorious defense under Rule 55(c). *See Hart v. Terry L. Hopkins Inc.*, 588 A.2d 1187, 1190 (Me. 1991). The Estate's statute of frauds defense also constitutes a potentially meritorious defense. Although that defense was first raised on March 22 in the amended answer to counterclaim – 29 days after the Estate tendered an unsigned answer as an exhibit to its motion to vacate – the amendment was within 20 days of the service and filing of the Estate's signed answer to the counterclaim. *See* M.R.Civ.P 15(a).[3]

---

[3] If the court were inclined to consider that the amendment would require leave of court, Rule 15(a) provides that leave to amend "shall be freely granted." Moreover, it also appears from the counterclaim that the promise by the decedent that Loughran is seeking to enforce was oral. *See Baudanza v. Mood*, 496 A.2d 310, 311 (Me. 1985) (statute of frauds must be raised as an affirmative defense unless it appears from the complaint that the contract was oral).

4

Finally and perhaps most significantly, this is not a case where the Estate has been disregarding the pendency of the litigation or has been seriously dilatory in responding. The Law Court has suggested that, when a party has already appeared and is prepared to litigate the issues, only "serious instances of noncompliance with pretrial procedures" should lead to a default. *Design Build of Maine v. Paul*, 601 A.2d 1089, 1091 (Me. 1992). The Estate's delay in filing an answer to the counterclaim in this case does not constitute a serious instance of noncompliance.

While concluding that no gross neglect has been shown that would justify a default, the court does not minimize the degree of sloppy and inadequate practice demonstrated by counsel for the Estate. This includes not only the apparent failure to serve a timely answer to the counterclaim but also (1) counsel's apparent intention to serve that answer by mail notwithstanding the recent amendment providing for electronic (email) service; (2) certificates of service showing that counsel has continued to serve pleadings by mail notwithstanding the electronic service amendment; (3) the failure to attach the identified exhibits to the Tranchemontagne affidavit; (4) the failure to file a signed answer to the counterclaim until March 18; and (5) the failure to raise statute of frauds until the amendment on March 22 – which, although arguably in technical compliance with Rule 15(a), stretches that rule to its outermost limits.

Given the above problems, the Estate has avoided default here by a hairbreadth and only because the court is adhering to the fundamental principle that cases should be decided on their merits. However, counsel for the Estate is on notice that full compliance with the applicable rules of civil procedure will henceforth be expected.

5

<u>Motion to Dismiss</u>

The Estate's motion to dismiss can be summarily denied. The court has concluded above that the Estate can raise the statute of frauds but cannot conclude that Loughran is not entitled to relief under any set of facts that he might prove in support of his claim. *See Moody v. State Liquor & Lottery Commission,* 2004 ME 20 ¶ 7, 843 A.2d 43. Specifically, to the extent that the statute of frauds is applicable, the court cannot exclude the possibility that Loughran's claim falls within one of the various exceptions to that doctrine.

The entry shall be:

1. Defendant's motion to direct the clerk to enter a default against plaintiff on defendant's counterclaim is denied. No default shall be entered.

2. Plaintiff's motion to dismiss the counterclaim is denied.

3. The Clerk is directed to incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: April **25**, 2019

Thomas D. Warren
Justice, Superior Court

Entered on the Docket: 4/26/19

6