STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, ss.                                         CIVIL ACTION
                                                       Docket No. CV-2020-529

AUTUMN NAILS, LLC,                     )
                                       )
        Plaintiff,                     )
                                       )
    v.                                 )
                                       )
CP WESTBROOK, LLC,                     )       ORDER ON THIRD-PARTY
                                       )     DEFENDANT TIMOTHY HILTZ'S
        Defendant/Third-              )        MOTION FOR SUMMARY
        Party Plaintiff,               )             JUDGMENT
                                       )
    v.                                 )
                                       )
TIMOTHY HILTZ,                         )
                                       )
        Third-Party Defendant.         )

        Before the Court is Third-Party Defendant Timothy Hiltz's ("Hiltz") Motion for

Summary Judgment. Third-Party Plaintiff CP Westbrook, LLC ("CP") opposes the

motion. For the following reasons, the Court grants the motion and enters summary

judgment in favor of Hiltz on CP's Third-Party Complaint.

I.      Facts

        The following is drawn from each of the parties' statements of material facts and

responses to the statements of material facts.[1]

        The subject premises is located at 64 Auburn Street ("the Property"). (Hiltz's

S.M.F. ¶ 1.) Among other structures, the Property includes a two-story building with

_____

[1] The Court notes that Hiltz included numerous facts that are irrelevant to the single count of tortious interference with a contract at issue in this motion. Additionally, Hiltz frequently provided incorrect citations to the record in his statement of material facts, which were corrected only in his reply. The Court takes this opportunity to remind counsel and the parties that M.R. Civ. P. 56(h)(1) requires a "short[] and concise" statement, and that "strict adherence to [M.R. Civ. P. 56's] requirements is necessary to ensure that the process is both predictable and just." *Cach, LLC v. Kulas*, 2011 ME 70, ¶ 12, 21 A.3d 1015 (quoting *Deutsche Bank Nat'l Tr. Co. v. Raggiani*, 2009 ME 120, ¶ 7, 985 A.2d 1).

Entered on the Docket: 8/23/2022

REC'D CUMB CLERKS OFC
AUG 23 '22 AM 8:24

nearly two thousand square feet of retail space on its first floor ("the Rental Space"). (Hiltz's S.M.F. ¶ 14.)

CP is a Maine-based company formed and managed by Samuel Eakin ("Eakin"). (Hiltz's S.M.F. ¶ 4.) CP operates as a "leasing conduit" for the Property. (Hiltz's S.M.F. ¶ 4; CP's Resp. to Hiltz's S.M.F. ¶ 4.)

Anndavy Sim ("Sim") is the sole owner and manager of Plaintiff Autumn Nails, LLC ("Autumn Nails"). (Hiltz's S.M.F. ¶ 29.) Sim is a Cambodian immigrant. (Hiltz's S.M.F. ¶ 20.) She speaks Cambodian as her first language and has some difficulty understanding English. (Hiltz's S.M.F. ¶ 21.) Sim acquired her salon business in 2017. (Hiltz's S.M.F. ¶ 22.)

Hiltz and his wife were longtime customers of Autumn Nails. (Hiltz's S.M.F. ¶ 23.) Hiltz had experience starting and selling companies. (Hiltz's S.M.F. ¶ 25.) Sim turned to Hiltz to assist her in opening her salon, filling out business documents, and teaching her about fundamental business and record keeping practices. (Hiltz's S.M.F. ¶ 28.) Hiltz did not loan money to Sim, apart from two personal loans for purchasing a used car. (Hiltz's S.M.F. ¶¶ 106, 121.)

In the late summer of 2018, Eakin listed the Rental Space with a broker on behalf of CP. (Hiltz's S.M.F. ¶ 29.) In late 2018, Autumn Nails, with the assistance of a broker, began searching for a space for its business. (Hiltz's S.M.F. ¶ 18.) With the assistance of Attorney Stephen Bither, then-counsel for Autumn Nails, Sim entered into a five-year, triple net lease for the Rental Space on behalf of Autumn Nails. (Hiltz's S.M.F. ¶ 33.)

Hiltz first met Eakin when he was "checking out" the Rental Space for Sim. (Hiltz's S.M.F. ¶ 30.) Hiltz provided Eakin with some background information about Autumn Nails. (Hiltz's S.M.F. ¶ 31.) Eakin learned that Hiltz was acting as a friend to Sim and did not represent Autumn Nails. (Hiltz's S.M.F. ¶ 32.)

Hiltz and Eakin continued to cross paths thereafter. (Hiltz's S.M.F. ¶ 34.) Hiltz and Eakin would meet over lunch to discuss general topics. (Hiltz's S.M.F. ¶ 34.) Although the purpose of the meetings was not to discuss Autumn Nails, they would sometimes discuss the salon's operations. (Hiltz's S.M.F. ¶ 34; CP's Resp. to Hiltz's S.M.F. ¶ 34.) At some point, Hiltz told Eakin that he loaned $30,000 to Autumn Nails, but this statement was false. (CP's S.M.F. ¶ 1.)

Eakin viewed Hiltz as a conduit to communicate Eakin's concerns about Sim's operation of Autumn Nails. (Hiltz's S.M.F. ¶ 35.) On several occasions, Eakin emailed Hiltz about his concerns regarding the salon's business model. (Hiltz's S.M.F. ¶¶ 40, 45, 48, 57-61.) Eakin never thought Hiltz had the authority to make changes to how Autumn Nails conducted its business. (Hiltz's S.M.F. ¶ 36.)

In Eakin's experience, Hiltz was a "bully." (Hiltz's S.M.F. ¶ 94.) When Hiltz and Eakin encountered each other in a parking lot around Thanksgiving 2019, Hiltz told Eakin that he was going to sue Eakin. (Hiltz's S.M.F. ¶¶ 97, 99.) Hiltz believed that Eakin was stealing electricity from Autumn Nails and abusing Sim. (Hiltz's S.M.F. ¶ 98.)

On December 27, 2019, Eakin issued a Notice of Default and Termination letter ("Notice Letter") to Autumn Nails on behalf of CP after its rent check for December bounced. (Hiltz's S.M.F. ¶¶ 56-62.) The Notice Letter stated that the lease was terminated, and that unless a new lease was formalized, Autumn Nails must vacate the Property within thirty days. (Hiltz's S.M.F. ¶ 63.) The Notice Letter set forth seven terms to be included in a new lease and set a deadline to execute a new lease of January 12. (Hiltz's S.M.F. ¶¶ 65, 66.)

On January 6, 2020, a meeting was convened between Eakin and Sim, along with Attorney Bither and an interpreter, at the salon. (Hiltz's S.M.F. ¶ 77.) The parties discussed a construction plan to refit the Rental Space. (Hiltz's S.M.F. ¶ 79.) At the

conclusion of the meeting, Eakin believed the parties reached a binding agreement regarding the lease. (Hiltz's S.M.F. ¶ 80.) Sim believed that she agreed to a reduction in rent, but she wanted time to fully understand the proposal and discuss with Hiltz before agreeing to other terms. (Hiltz's S.M.F. ¶ 76.)

After the meeting, the next step was for Attorney Bither, representing Autumn Nails, to write up "something that sort of identified the issues or points of agreement." (CP's S.M.F. ¶ 17; Hiltz's Resp. to CP's S.M.F. ¶ 17.) Attorney Bither's understanding was that Eakin was responsible for drafting the modified lease because he was the landlord. (Hiltz's S.M.F. ¶¶ 89-90.) Attorney Bither began drafting the parameters of the agreement, but he did not finish the draft. (CP's S.M.F. ¶ 18.)

In the weeks following the January 6th meeting, Hiltz and Attorney Bither had a phone conversation during which they discussed a range of topics relating to Autumn Nails, including Attorney Bither's account of the earlier meeting.[2] (Hiltz's S.M.F. ¶ 84.) Hiltz told Attorney Bither that he disagreed with the terms of the modification. (CP's S.M.F. ¶ 10.) Hiltz expressed concerns about the timing of construction for refitting the Property, among other issues. (Hiltz's S.M.F. ¶ 85.) Hiltz did not tell Attorney Bither to stop work on the lease, but he did indicate that he was going to hire an attorney from another firm to handle tenancy issues for Autumn Nails.[3] (Hiltz's S.M.F. ¶ 87; CP's S.M.F. ¶ 21.) Attorney Bither assumed that he was no longer representing Autumn Nails on the lease modification. (CP's S.M.F. ¶ 20; Hiltz's Resp. to CP's S.M.F. ¶ 20.) He ceased work

---

[2] Attorney Bither believed that Eakin had told him that Hiltz was a lender to Autumn Nails or Sim, but neither Hiltz nor anyone at Autumn Nails indicated that Hiltz was a lender to Autumn Nails. (CP's S.M.F. ¶ 22; Hiltz's Resp. to CP's S.M.F. ¶ 22.)

[3] The material cited by CP Westbrook in opposition to Hiltz's Statement of Material Fact ¶ 87 does not controvert the statement. Accordingly, it is deemed admitted.

on the memorandum of understanding after his conversation with Hiltz. (CP's S.M.F. ¶ 19.)

Eakin attempted to email Attorney Bither in February 2020 to inquire about the draft, but he mistakenly sent the emails to the wrong email address. (Hiltz's S.M.F. ¶¶ 109-10.) In one of the emails, Eakin reports that Hiltz told him that Sim was contemplating suing CP. (Hiltz's S.M.F. ¶ 111.)

Pending the modification of the lease, Autumn Nails was treated as a month-to-month tenant with monthly rent payments of $1,350. (Hiltz's S.M.F. ¶ 82; CP's S.M.F. ¶ 16.) Sim did not hear further from Attorney Bither or Eakin regarding the lease modifications. (Hiltz's S.M.F. ¶ 124.) Neither party ever produced a new lease. (Hiltz's S.M.F. ¶ 81.)

Eakin believes that Hiltz's phone call to Attorney Bither derailed the lease negotiations. (Hiltz's S.M.F. ¶ 96.) In 2017, Hiltz had filed a bar complaint against Attorney Bither over a perceived conflict of interest in a different transaction involving Autumn Nails. (CP's S.M.F. ¶¶ 5, 6.) During the lease modification negotiations, Hiltz believed that Attorney Bither was simultaneously representing CP and Autumn Nails, which he perceived as a conflict of interest. (CP's S.M.F. ¶¶ 2, 3.) Attorney Bither, however, didn't view Hiltz's phone call as interference. (Hiltz's S.M.F. ¶ 91.) Attorney Bither interpreted the conversation to mean that he should wait for a call from Autumn Nails before continuing work. (Hiltz's S.M.F. ¶ 88.)

Eakin contends that Sim deferred to Hiltz, and that they had a close relationship. (Hiltz's S.M.F. ¶ 92.) Eakin does not know whether Hiltz induced Sim to break the parties' oral agreement to modify the lease. (Hiltz's S.M.F. ¶ 101.) Eakin does not possess direct evidence that Hiltz intimidated Attorney Bither or Sim. (Hiltz's S.M.F. ¶¶ 102, 103.)

On April 7, 2020, Eakin wrote to Autumn Nails and indicated that he was rejecting the request for an extension of the lease. (Hiltz's S.M.F. ¶ 115.) He stated that there was no lease because the former lease was cancelled in late December 2019. (Hiltz's S.M.F. ¶ 116.) On June 25, 2020, Attorney Jeffrey Piampiano wrote to CP on behalf of Autumn Nails and set forth claims that Autumn Nails planned to pursue against CP. (Hiltz's S.M.F. ¶ 120.)

In a one-count Third-Party Complaint for tortious interference with a contract, CP alleges that Hiltz interfered with Autumn Nails and CP's agreement to modify the lease through intimidation. Hiltz has moved for summary judgment on the Third-Party Complaint.

## II. Legal Standard

A party is entitled to summary judgment when review of the parties' statements of material facts and the record to which the statements refer demonstrates that there is no genuine issue as to any material fact in dispute, and that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. A contested fact is material if it could potentially affect the outcome of the case. *Dyer*, 2008 ME 106, ¶ 14, 951 A.2d 821. A genuine issue of material fact exists if the claimed fact would require a factfinder to "choose between competing versions of the truth." *Id.* (quoting *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504).

When deciding a motion for summary judgment, the court reviews the evidence in the light most favorable to the non-moving party. *Id.* The evidence offered in support of a genuine issue of material fact "need not be persuasive at that stage, but the evidence

must be sufficient to allow a factfinder to make a factual determination without speculating."[4] *Est. of Smith v. Cumberland County*, 2013 ME 13, ¶ 19, 60 A.3d 759.

### III. Discussion

"A viable claim for tortious interference with either an existing contractual relation or a prospective economic advantage requires (1) the existence of a valid contract or prospective economic advantage, (2) interference with that contract or advantage though fraud or intimidation, and (3) damages proximately caused by the interference." *Meridian Me. Sys., LLC v. Epix Therapeutics, Inc.*, 2021 ME 24, ¶ 51, 250 A.3d 122. Intent to interfere is also a required element. *James v. MacDonald*, 1998 ME 148, ¶ 9, 712 A.2d 1054. Hiltz concedes the existence of a valid contract or prospective economic advantage. (Hiltz's Mem. Supp. Mot. Summ. J. 12.)

Interference through intimidation may involve "unlawful coercion or extortion" of plaintiff or a third party. *Rutland v. Mullen*, 2002 ME 98, ¶ 16, 798 A.2d 1104; *see Harlor v. Amica Mut. Ins. Co.*, 2016 ME 161, ¶ 13, 150 A.3d 793 (declining to hold that conduct directed at the plaintiff instead of a third party cannot constitute intimidation). However, "'intimidation is not restricted to frightening a person for coercive purposes.'" *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 31, 915 A.2d 400 (quoting *Pombriant v. Blue Cross/Blue Shield of Me.*, 562 A.2d 656, 659 (Me. 1989)). Interference through intimidation also exists "wherever a defendant has procured a breach of contract by 'making it clear' to the party with which the plaintiff had contracted that the only manner in which that party could

---

[4] Each party's statements must include a reference to the record where "facts as would be admissible in evidence" may be found. M.R. Civ. P. 56(e). A party's opposing statement of material facts "must explicitly admit, deny or qualify facts by reference to each numbered paragraph, and a denial or qualification must be supported by a record citation." *Stanley v. Hancock Cnty. Comm'rs*, 2004 ME 157, ¶ 13, 864 A.2d 169.

avail itself of a particular benefit of working with defendant would be to breach its contract with plaintiff."[5] *Id.* (quoting *Pombriant*, 562 A.2d at 659).

CP asserts that Hiltz intimidated Attorney Bither during their phone call in the weeks following the January 6th meeting. CP alleges that because Hiltz had filed a bar complaint against Attorney Bither in 2017, Attorney Bither understood that if he did not cease drafting the memorandum of understanding, then Hiltz would file a bar complaint against Attorney Bither. The undisputed facts do not support CP's narrative. There is no evidence that Hiltz expressed or implied this threat to Attorney Bither. Attorney Bither interpreted Hiltz's message simply to mean that he should wait for a phone call from Autumn Nails.

In the alternative, CP argues that Hiltz intimidated Sim, which induced her to terminate lease negotiations on behalf of Autumn Nails. CP points to evidence in the record that Hiltz loaned Sim money for a car, that Sim relied on Hiltz for assistance in running her business, and that Sim wanted to discuss the lease modifications with Hiltz before agreeing to them. CP argues that this evidence generates a reasonable inference of intimidation. A factfinder could not reach this conclusion without speculation. There is no evidence supporting a reasonable inference that Hiltz coerced Sim—who voluntarily sought his advice—or threatened to withhold some benefit if she followed through with the parties' agreement to modify the lease.

Finally, CP vaguely argues that Hiltz intimidated Eakin through threats of litigation to prevent CP "from enforcing its rights." On this record, the only incidents of

---

[5] Direct evidence of intimidation is not necessary to survive a motion for summary judgment if the evidence in the summary judgment record supports a reasonable inference of intimidation. *See Currie*, 2007 ME 12, ¶ 34, 915 A.2d 400 ("[D]espite the absence of direct evidence of intimidation, a jury could infer that Johnson fired Currie out of fear that ISI would lose its security contract with the mill if he did not follow Ouellette's recommendation. Such an inference would be sufficient to establish intimidation on summary judgment.").

Hiltz threatening litigation are the parking lot confrontation in November 2019 about the salon's utilities and Hiltz's assertion after the January 6th meeting that Autumn Nails was planning to sue CP.[6] Hiltz's statement to Eakin that Sim was contemplating suing CP is not intimidation. Even if it were intimidation, there is no evidence that Hiltz's statement interfered with the lease modification agreement. Nor is it apparent how a confrontation in November 2019 could interfere with a lease negotiation several months later.

In sum, there is no direct evidence or evidence supporting a reasonable inference that Hiltz interfered with the lease modification agreement by intimidating Attorney Bither, Sim, or Eakin. Nor is there a genuine dispute as to any fact material to the element of interference through intimidation. Because the second element of CP's claim is not satisfied, the Court need not reach the third element.[7]

Because there are no material disputes of fact and the second element of tortious interference with a contract or prospective economic advantage is absent, Hiltz is entitled to the entry of summary judgment in his favor on the Third-Party Complaint.

IV.    Conclusion

For the foregoing reasons, the Court grants Hiltz's Motion for Summary Judgment.

The entry is:

---

[6] In its memorandum of law in opposition to Hiltz's Motion for Summary Judgment, CP makes several assertions supported by citation to portions of the record that are not referenced in the parties' statements of material facts. The Court will not consider these assertions or portions of the record.

[7] The existence of the third element, proximate causation of damages, is doubtful. CP asserts that were it not for Hiltz's actions, the lease would have been modified and CP would have received $1,350 in rent each month for three years. However, the undisputed facts indicate that CP ended the landlord-tenant relationship by terminating the month-to-month tenancy that existed pending finalization of the modified lease. Attorney Bither was not meant to prepare the modified lease, and CP never presented Autumn Nails with a lease to sign.

Third-Party Defendant Timothy Hiltz's Motion for Summary Judgment is GRANTED. Summary judgment is entered in Hiltz's favor on the Third-Party Complaint.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Dated: _____8/22/2022_____

MaryGay Kennedy, Justice
Maine Superior Court